**LAW OFFICES OF WAYNE S. KREGER, P.A.**
WAYNE S. KREGER, California Bar No. 154759
wayne@kregerlaw.com
100 Wilshire Boulevard, Suite 940
Santa Monica, California  90401
Telephone (310) 917-1083
Facsimile (310) 917-1001

**TYCKO & ZAVAREEI LLP**
HASSAN A. ZAVAREEI, California Bar No. 181547
hzavareei@tzlegal.com
2000 L Street, NW
Suite 808
Washington, DC 20036
Telephone (202) 973-0900
Facsimile (202) 973-0950

**KOPELOWITZ OSTROW P.A.**
JEFFREY M. OSTROW, Florida Bar No. 121452
ostrow@kolawyers.com
200 S.W. 1st Avenue, 12th Floor
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Facsimile: (954) 525-4300
(*pro hac vice to be filed*)

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

KEVIN BRANCA, individually and on behalf of all others similarly situated,

Plaintiff,

vs.

NORDSTROM, INC.,

Defendant.

Case No.   **'14 CV 2062 MMA JMA**

**CLASS ACTION COMPLAINT**
**DEMAND FOR JURY TRIAL**

1. Violation of the "Unfair" Prong of the UCL
2. Violation of the "Fraudulent" Prong of the UCL
3. Violation of the "Unlawful" Prong of the UCL
4. Violation of the California False Advertising Law, California Business & Professions Code Sections 17500, *et seq.*
5. Violation of the Consumers Legal Remedies Act, California Civil Code Sections 1750, *et seq.*: Injunctive Relief

## CLASS ACTION COMPLAINT

Plaintiff, KEVIN BRANCA ("Plaintiff"), on behalf of himself and all others similarly situated, alleges the following based upon personal knowledge as to allegations regarding Plaintiff and on information and belief as to other allegations:

## INTRODUCTION

1.      This is a civil class action seeking monetary damages, restitution, injunctive and declaratory relief from Defendant, Nordstrom, Inc. ("Nordstrom"), arising from its deceptive and misleading labeling and marketing of merchandise it sells at its company-owned Nordstrom Rack stores.

2.      During the Class Period (defined below), Nordstrom misrepresented the existence, nature, and amount of price discounts on products: (a) manufactured exclusively for Nordstrom Rack and sold at Nordstrom Rack; and (b) manufactured by other brands and sold at Nordstrom Rack (collectively "Nordstrom Rack Products") by purporting to offer discounts off of fabricated former prices.  The term "Nordstrom Rack Products" expressly excludes products sold at Nordstrom Rack stores that were actually previously offered for sale at Nordstrom main line retail stores.

3.      Specifically, Nordstrom represented—on the price tags of its Nordstrom Rack Products—"Compare At" prices that were overstated and did not represent a bona fide price at which Nordstrom formerly sold Nordstrom Rack Products.  Nor were the advertised "Compare At" prices prevailing market retail prices within three

months immediately preceding the publication of the advertised former prices, as required by California law.

4.    Having touted false "Compare At" prices, Nordstrom then offered, on the same sales tags, to sell Nordstrom Rack Products for prices that supposedly represented a deep percentage discount off of the false "Compare At" prices.

5.    But the "Compare At" prices used by Nordstrom were a sham. In fact, Nordstrom sells certain goods manufactured by third-party designers for *exclusive sale* at its Nordstrom Rack stores and other outlet stores, which means that such items were never sold—or even intended to be sold—at the "Compare At" prices advertised on the price tags.  Nordstrom Rack Products were never offered for sale in Nordstrom's main line retail stores in California, or in any other state.  Nordstrom Rack's website, however, falsely suggests that the Nordstrom Rack Products are equivalent to the products sold at Nordstrom's main line retail stores: "Why Shop the Rack? Because we have the most current trends and the brands you love for 30-70% off original prices—each and every day."  The truth is that the Nordstrom Rack Products are not discounted off "original prices." The Nordstrom Rack Products are *never* offered for sale at the Nordstrom main line retail stores and are typically of lesser quality.

6.     The "Compare At" prices listed on Nordstrom Rack Products' tags did not represent a former price at all—much less a former price in the preceding three months.  They are fictional amounts intentionally selected so that Nordstrom Rack could advertise phantom markdowns.  The entire price tag – indeed the entire "outlet

store" motif – is designed to falsely convince consumers that they are buying main line retail designer brand products at reduced prices.  In fact, consumers are buying lower quality goods that were never offered or sold as genuine quality designer brand clothing and accessories.

7.    The Federal Trade Commission ("FTC") explicitly describes the fictitious pricing scheme employed at Nordstrom Rack stores as deceptive:

> (a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious -- for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction -- the ``bargain'' being advertised is a false one; the purchaser is not receiving the unusual value he expects. In such a case, the "reduced" price is, in reality, probably just the seller's regular price.

16 C.F.R. § 233.1.

8.    Similarly, California statutory and regulatory law expressly prohibits false pricing schemes. *Business & Professions Code* § 17501, entitled "*Value determinations; Former price advertisements*," states:

> For the purpose of this article the worth or value of anything advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.
> *No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication*

*of the advertisement* or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

(emphasis added).

9.      The Nordstrom Rack pricing scheme was prominently displayed on all products available for sale at Nordstrom Rack stores in California.  To illustrate, a merchandise price tag for an item sold at Nordstrom Rack is pictured below:



10.      Upon information and belief, thousands of California consumers were victims of Nordstrom's deceptive, misleading, and unlawful false pricing scheme and thousands more will be deceived if the practices continue.

11.      Nordstrom fraudulently concealed from, and intentionally failed to disclose to, Plaintiff, and others similarly situated, the truth about its "Compare At" prices and advertised price discounts from those supposedly former prices.

12.      Nordstrom's false representations of original prices and false representations of purported savings, discounts, and bargains are objectively material to a reasonable consumer.

13.   Plaintiff relied upon such false representations of "Compare At" prices and discounts when purchasing apparel from a Nordstrom Rack store in California. Plaintiff would not have made such purchase, or would not have paid the amount he did, but for Nordstrom's false representations of the former price of the items he purchased, as compared to the supposedly discounted "Compare At" price and corresponding "savings" at which Nordstrom Rack offered the items for sale.

14.   Plaintiff, in short, believed the truth of the price tags attached to the products he purchased at Nordstrom Rack, which expressly advertised that he was getting a significant discount on his purchase.  In fact, he was not getting a bargain at all.

15.   Through its false and deceptive marketing, advertising, and pricing scheme, Nordstrom violated (and continues to violate) California law prohibiting advertising goods for sale as discounted from former prices which are false, and prohibiting misleading statements about the existence and amount of price reductions. Specifically, Nordstrom violated (and continues to violate) California's *Business & Professions Code* §§ 17200, *et seq.* (the "UCL"), California's *Business and Professions Code* §§ 17500, *et seq.* (the "FAL"), the California Consumers' Legal Remedies Act, *Civil Code* §§1750, *et seq.* (the "CLRA"), and the Federal Trade Commission Act ("FTCA"), which prohibits "unfair or deceptive acts or practices in or affecting commerce" and specifically prohibits false advertisements. 15 U.S.C. §§ 52(a) and 15 U.S.C. § 45(a)(1).

16. Plaintiff, individually and on behalf of all others similarly situated, seeks restitution and other equitable remedies, including an injunction under the UCL, FAL and CLRA.

**PARTIES**

17. Plaintiff, Kevin Branca, is an individual who is a citizen of the city of San Marcos, in the county of San Diego, California. In reliance on Nordstrom's false and deceptive advertising, marketing, and pricing schemes, Mr. Branca purchased three items from Nordstrom Rack located in San Marcos, California, on July 12, 2013, and as detailed herein, was damaged as a result thereof.

18. Defendant Nordstrom, Inc. is a corporation duly organized and existing under the laws of the State of Washington, with its principal place of business at 1617 Sixth Avenue, Seattle, WA, 98101.

19. As of 2013, Nordstrom operates thirty seven (37) Nordstrom Rack stores in California.

**JURISDICTION AND VENUE**

20. This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the members of the putative Class exceed $5 million, exclusive of costs, and at least one of the members of the proposed Class is a citizen of a different state than Nordstrom, Inc.

21.    The Southern District of California has personal jurisdiction over Nordstrom, Inc. because Nordstrom, Inc. is licensed and doing business in San Diego County, State of California, authorized to do business in California and registered with the California Secretary of State, and has sufficient minimum contacts with California, having intentionally availed itself of the California market so as to render the exercise of jurisdiction over it by this District Court consistent with traditional notions of fair play and substantial justice.

22.    Venue is proper in the United States District Court, Southern District of California pursuant to 28 U.S.C. § 1391, because Plaintiff is a resident of San Diego County, California; Defendant operates its stores in San Diego County, California and because a the events giving rise to the claims occurred in San Diego County, California.

## FACTUAL ALLEGATIONS

23.    Traditionally, retail outlet stores were located in remote areas and typically maintained an inventory of defective and excess merchandise. Customers often flocked to these outlets in hopes of finding steep discounts and bargains. *See http://www.forbes.com/sites/investopedia/2012/12/29/7-tips-for-outlet-mall-shopping/* (last visited August 11, 2014).

24.    However, in an effort to increase profits, major retailers such as Nordstrom Rack have, without notice to consumers, begun using company-owned

outlet stores to sell made-for-outlet goods that are never intended to be sold at non-outlet stores.

25.   The very term "outlet" conveys to reasonable consumers that products are comprised of merchandise formerly offered for sale at full-price retail locations. Similarly, the Nordstrom Rack name connotes a store selling discounted outlet clothing.  Indeed, Nordstrom Rack's website describes Nordstrom Rack as "the off-price retail division of Nordstrom Inc., which was founded in 1901 in Seattle, Washington by John W. Nordstrom."

26.   Instead, retailers like Nordstrom create the illusion of traditional outlet discounts and bargains by offering the made-for-outlet goods at prices reduced from fabricated, arbitrary, and false prices.  In short, outlet stores such as Nordstrom Rack are using false and fraudulent price comparison tactics.  *See http://www.buzzfeed.com/sapna/customers-finally-aware-that-most-outlet-merchandise-is-now* (last visited August 11, 2014) ("While price tags on outlet goods may list a manufacturer-suggested retail price (known as an MSRP) or, a 'valued at' price, that's little more than a number ascribed by the retailer and doesn't mean it was ever sold for such a sum in an actual full-price retail location. (Giant discounters like T.J. Maxx and Nordstrom Rack also label prices this way.)").

27.   The intentional use of false and fraudulent price comparison tactics is increasingly deceiving consumers in the market.  To illustrate, on January 30, 2014, four Members of Congress demanded an FTC investigation of misleading marketing

practices by outlet stores across the United States.  The four Members of Congress described a pricing scheme similar to the one implemented at Nordstrom Rack stores and stated, "[i]t is a common practice at outlet stores to advertise a retail price alongside the outlet store price—even on made-for-outlet merchandise that does not sell at regular retail locations. Since the item was never sold in the regular retail store or at the retail price, the retail price is impossible to substantiate. We believe this practice may be a violation of the FTC's Guides Against Deceptive Pricing (16 CFR 233)." *See http://www.whitehouse.senate.gov/news/release/sens-and-rep-to-ftc-outlet-stores-may-be-misleading-consumers* (last visited August 11, 2014).

28.    This is precisely the practice used by Nordstrom in its Nordstrom Rack stores.

### Plaintiff's Purchase

29.    On July 12, 2013, Plaintiff entered the Nordstrom Rack located in San Marcos, California.  He observed that merchandise was advertised with price tags that represented "Compare At" prices that were directly on top of prices significantly reduced by a percentage amount.  Enticed by the idea of paying significantly less than the "Compare At" price charged outside of Nordstrom Rack, Plaintiff was induced to purchase one pair of cargo shorts with a "Compare At" price of $49.50 and an actual price of $29.97.

30.    By purchasing the cargo shorts for the $29.97 instead of the "Compare At" price of $49.50, Plaintiff was led to believe that he saved at least 60% on his

purchase. In reality, Nordstrom never intended, nor did it ever, sell the cargo shorts at the represented "Compare At" price. Thus, Plaintiff was deceived by the false price comparison into making a full retail purchase with no discount.

31.    On the same date, Plaintiff made two other purchases at Nordstrom Rack. Again, enticed by the idea of paying significantly less than the "Compare At" price charged outside of Nordstrom Rack, Plaintiff was induced to purchase a hooded sweatshirt with a "Compare At" price of $65.00 and an actual price of $29.97, as well as one pair of pants with a "Compare At" price of $150.00 and an actual price of $79.97.

32.    By purchasing the hooded sweatshirt for the $29.97 instead of the "Compare At" price of $65.00, Plaintiff was led to believe that he saved at least 46% on his purchase. In reality, Nordstrom never intended, nor did it ever, sell the hooded sweatshirt at the represented "Compare At" price. Thus, Plaintiff was deceived by the false price comparison into making a full retail purchase with no discount.

33.    By purchasing the pants for the $79.97 instead of the "Compare At" price of $150.00, Plaintiff was led to believe that he saved at least 53% on his purchase. In reality, Nordstrom never intended, nor did it ever, sell the pants at the represented "Compare At" price. Thus, Plaintiff was deceived by the false price comparison into making a full retail purchase with no discount.

34.   Plaintiff's and class members' reliance on Nordstrom's false price comparison advertising was reasonable.  In fact, empirical marketing studies provide an incentive for retailers to engage in this false and fraudulent behavior:

> [c]omparative price advertising offers consumers a basis for comparing the relative value of the product offering by suggesting a monetary worth of the product and any potential savings…[A] comparative price advertisement can be construed as deceptive if it makes any representation,… or involves any practice that may materially mislead a reasonable consumer.

*Comparative Price Advertising: Informative or Deceptive?,* Dhruv Grewal and Larry D. Compeau, *Journal of Public Policy & Marketing* , Vol. 11, No. 1, at 52 (Spring 1992). In short:

> [b]y creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product…Thus, if the reference price is not truthful, a consumer may be encouraged to purchase as a result of a false sense of value.

*Id.* at 55, 56.

35.   Despite the "Compare At" scheme used at Nordstrom Rack stores, Plaintiff would purchase Nordstrom Rack Products in the future from Nordstrom Rack stores and/or other retail establishments, if price tags accurately reflect "former" prices and discounts.  Currently, however, Plaintiff and California consumers have no realistic way to know which—if any—of Nordstrom Rack price tag comparisons are not false or deceptive.  If the Court were to issue an injunction ordering Nordstrom to comply with California's comparative price advertising laws, and prohibiting

Nordstrom's use of the deceptive practices discussed herein, Plaintiff would likely shop for Nordstrom Rack Products again in the near future at Nordstrom Rack stores.

## CLASS ALLEGATIONS

36.    Plaintiff incorporates and realleges by reference each and every allegation contained in the preceding paragraphs as if set forth herein in full.

37.    Plaintiff brings this action on behalf of himself and the members of the proposed Class.  The proposed Class consists of:

> All individuals residing in the State of California who, within the applicable statute of limitations preceding the filing of this action, purchased  Nordstrom Rack Products.

38.    Excluded from the Class are Nordstrom, its parents, subsidiaries, affiliates, officers and directors, any entity in which Nordstrom has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

39.    The members of the Class are so numerous that joinder is impractical. The Class consists of thousands of members, the precise number which is within the knowledge of and can be ascertained only by resort to Nordstrom's records.

40.    There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

(a) Whether, during the Class Period, Nordstrom used false price representations and falsely advertised price discounts on Nordstrom Rack Products;

(b) Whether, during the Class Period, the "Compare At" prices advertised by Nordstrom were the prevailing market prices for the Nordstrom Rack Products during the three month periods preceding the dissemination and/or publication of the advertised former prices;

(c) Whether Nordstrom's use of false or deceptive price advertising constituted false advertising under California Law;

(d) Whether Nordstrom engaged in unfair, unlawful and/or fraudulent business practices under California law;

(e) Whether Nordstrom misrepresented and/or failed to disclose material facts about its product pricing and discounts.

(f) Whether Nordstrom made false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;

(g) Whether Nordstrom's conduct, as alleged herein, was intentional and knowing;

(h) Whether Class members are entitled to damages and/or restitution, and in what amount;

(i) Whether Nordstrom is likely to continue using false, misleading or illegal price comparisons such that an injunction is necessary; and

(j) Whether Plaintiff and Class members are entitled to an award of reasonable attorneys' fees, pre-judgment interest and costs of suit.

41.    Plaintiff's claims are typical of the claims of the members of the Class and, like all members of the Class, purchased goods from a Nordstrom Rack store that falsely conveyed a "Compare At" price and a fictitious discount.   Accordingly, Plaintiff has no interests antagonistic to the interests of any other member of the Class.

42.    Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class, and has retained counsel who is experienced in prosecuting class actions. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

43.    A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Nordstrom's wrongful conduct are too small to warrant the expense of individual lawsuits.   The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

44.    The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of

conduct for Nordstrom.   For example, one court might enjoin Nordstrom from performing the challenged acts, whereas another might not.   Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

45.     The conduct of Nordstrom is generally applicable to the Class as a whole and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Class as a whole. As such, the systematic policies and practices of Nordstrom make declaratory relief with respect to the Nordstrom  California class as a whole appropriate.

## COUNT I
### (Violation of the "Unfair" Prong of the UCL)

46.     Plaintiff incorporates and realleges by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

47.     The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. *Business & Professions Code* § 17200.

48.     A business act or practice is "unfair" under the UCL if the reasons, justifications and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

49.     Nordstrom has violated the "unfair" prong of the UCL by representing a false "Compare At" price and corresponding percentage discount price for Nordstrom Rack Products. As a result, the inflated "Compare At" price and corresponding

percentage discount price was nothing more than a false, misleading and deceptive illusion of a discount.

50.    These acts and practices are unfair because they caused Plaintiff, and are likely to cause consumers, to falsely believe that Nordstrom Rack is offering value, discounts or bargains from the prevailing market worth of the products sold that did not, in fact, exist.  As a result, purchasers, including Plaintiff, reasonably perceived that they were receiving products that regularly sold in the non-outlet retail marketplace at substantially higher prices (and were, therefore, worth more) than what they paid.  This perception has induced reasonable purchasers, including Plaintiff, to buy Nordstrom Rack Products, which they otherwise would not have purchased.

51.    The gravity of the harm to members of the Class resulting from these unfair acts and practices outweighed any conceivable reasons, justifications and/or motives of Nordstrom Rack for engaging in such deceptive acts and practices.  By committing the acts and practices alleged above, Nordstrom engages in unfair business practices within the meaning of California Business & Professions Code §§ 17200, *et seq*.

52.    Through its unfair acts and practices, Nordstrom has improperly obtained money from Plaintiff and the Class.  As such, Plaintiff requests that this court cause Nordstrom to restore this money to Plaintiff and all Class members, and to enjoin Nordstrom from continuing to violate the UCL as discussed herein and/or from violating the UCL in the future.  Otherwise, Plaintiff and the Class may be irreparably

harmed and/or denied an effective and complete remedy if such an order is not granted.

## COUNT II
### (Violation of the "Fraudulent" Prong of the UCL)

53.     Plaintiff incorporates and realleges by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

54.     The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Pro. Code § 17200.

55.     A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

56.     The labels on the Nordstrom Rack Products and advertising materials concerning false former prices were fraudulent within the meaning of the UCL because they deceived Plaintiff, and were likely to deceive members of the class, into believing that Nordstrom was offering value, discounts or bargains at Nordstrom Rack stores from the prevailing market value or worth of the products sold that did not, in fact, exist.

57.     Nordstrom deceived consumers into believing that it was offering value, discounts or bargains at Nordstrom Rack stores from the prevailing market value or worth of the Nordstrom Rack products sold that did not, in fact, exist.

58.     As a result, purchasers, including Plaintiff, reasonably perceived that they were receiving products that regularly sold in the main line retail marketplace at

substantially higher prices (and were, therefore, worth more) than what they paid. This perception induced reasonable purchasers, including Plaintiff, to buy Nordstrom Rack Products, which they otherwise would not have purchased.

59.     Nordstrom's acts and practices as described herein have deceived Plaintiff and were highly likely to deceive members of the consuming public. Specifically, in deciding to purchase Nordstrom Rack Products, Plaintiff relied on Nordstrom's misleading and deceptive representations regarding its "Compare At" and percentage discounted prices.  Each of these factors played a substantial role in Plaintiff's decision to purchase those products, and Plaintiff would not have purchased those items in the absence of Nordstrom's misrepresentations.  Accordingly, Plaintiff suffered monetary loss as a direct result of Nordstrom's pricing practices described herein.

60.     As a result of the conduct described above, Nordstrom has been unjustly enriched at the expense of Plaintiff and members of the proposed Class.  Specifically, Nordstrom has been unjustly enriched by obtaining revenues and profits that it would not otherwise have obtained absent its false, misleading and deceptive conduct.

61.     Through its unfair acts and practices, Nordstrom has improperly obtained money from Plaintiff and the Class.  As such, Plaintiff requests that this court cause Nordstrom to restore this money to Plaintiff and all Class members, and to enjoin Nordstrom from continuing to violate the UCL as discussed herein and/or from violating the UCL in the future. Otherwise, Plaintiff and the Class may be irreparably

harmed and/or denied an effective and complete remedy if such an order is not granted.

## COUNT III
### (Violation of the "Unlawful" Prong of the UCL)

62.     Plaintiff incorporates and realleges by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

63.     The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. *Business & Professions Code* § 17200.

64.     A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

65.     California statutory and regulatory law also expressly prohibits false former pricing schemes. *Business & Professions Code* § 17501, entitled "*Value determinations; Former price advertisements*," states:

> For the purpose of this article the worth or value of anything advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.

> *No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement* or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement. [Emphasis added.]

66.     *Civil Code* § 1770, subsection (a)(9), prohibits a business from "[a]dveritsing goods or services with intent not to sell them as advertised," and

subsection (a)(13) prohibits a business from "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions."

67.   Nordstrom also violated and continues to violate *Business & Professions Code* § 17501, and *Civil Code* § 1770, sections (a)(9) and (a)(13) by advertising false discounts from purported former prices that were, in fact, not the prevailing market prices within three months next preceding the publication and dissemination of advertisements containing the false former prices.

68.   The FTCA prohibits "unfair or deceptive acts or practices in or affecting commerce" and specifically prohibits false advertisements. (15 U.S.C. § 45(a)(1) and 15 U.S.C. § 52(a)). The FTC has established guidelines which prohibit false pricing schemes, similar to Nordstrom's "Compare At" scheme in material respects, as deceptive practices that would violate the FTCA:

(a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious -- for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction -- the ``bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects. In such a case, the "reduced" price is, in reality, probably just the seller's regular price.

16 C.F.R. § 233.1.

69.   Nordstrom's use of and reference to a materially false "Compare At" price in connection with its marketing and advertisements concerning the Nordstrom

Rack Products violated and continues to violate the FTCA, 15 U.S.C. § 45(a)(1) and 15 U.S.C. § 52(a), as well as FTC Guidelines published at 16 C.F.R. § 233.

70. As a result of the conduct described above, Nordstrom has been unjustly enriched at the expense of Plaintiff and members of the proposed Class. Specifically, Nordstrom has been unjustly enriched by obtaining revenues and profits that it would not otherwise have obtained absent its false, misleading and deceptive conduct.

71. Through its unlawful acts and practices, Nordstrom has improperly obtained money from Plaintiff and the Class. As such, Plaintiff requests that this court cause Nordstrom to restore this money to Plaintiff and all Class members, and to enjoin Nordstrom from continuing to violate the UCL as discussed herein and/or from violating the UCL in the future. Otherwise, Plaintiff and the Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## COUNT IV
### (Violation of the California False Advertising Law, California Business & Professions Code Sections 17500, *et seq.*)

72. Plaintiff incorporates and realleges by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

73. California's *Business and Professions Code* §§ 17500, *et seq.* prohibits unfair, deceptive, untrue, or misleading advertising, including, but not limited to, false statements as to worth, value and former price.

74. Nordstrom's practice of advertising "Compare At" prices on price tags on Nordstrom Rack Products, which were materially greater than the actual prices of

those products was an unfair, deceptive and misleading advertising practice because it gave the false impression that the Nordstrom Rack Products were regularly sold in the main line retail marketplace at substantially higher prices (and were, therefore, worth more) than they actually were.  In fact, the exclusive, Nordstrom Rack Products did not have a prevailing market price anywhere close to the "Compare At" price advertised because the merchandise was always sold under the percentage discounted price when placed on sale at the Nordstrom Rack stores.

75.    Through its unfair acts and practices, Nordstrom has improperly obtained money from Plaintiff and the Class.  As such, Plaintiff requests that this court cause Nordstrom to restore this money to Plaintiff and all Class members, and to enjoin Nordstrom from continuing to violate the FAL as discussed herein and/or from violating the FAL in the future. Otherwise, Plaintiff and the Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

### COUNT V
**(Violation of the Consumers Legal Remedies Act,
California Civil Code Sections 1750, *et seq.*: Injunctive Relief)**

76.    Plaintiff incorporates and realleges by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

77.    This cause of action is brought pursuant to the CLRA.

78.    Plaintiff and each member of the proposed class are "consumers" within the meaning of California Civil Code § 1761(d).

79.     Nordstrom's selling of Nordstrom Rack Products to Plaintiff and the Class were "transactions" within the meaning of California *Civil Code* § 1761(e).  The Nordstrom Rack Products purchased by Plaintiff and the Class are "goods" within the meaning of *Civil Code* §1761(a).

80.     As described herein, Nordstrom violated the CLRA by falsely representing the nature, existence and amount of price discounts by fabricating inflated labeled "Compare At" prices. Such a pricing scheme is in violation of *Civ. Code* § 1770, subsection (a)(9) ("[a]dvertising goods or services with intent not to sell them as advertised") and subsection (a)(13) ("[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions").

81.     Plaintiff relied on Nordstrom's false representations in deciding to purchase Nordstrom Rack Products.  Plaintiff would not have purchased Nordstrom Rack Products absent Nordstrom's unlawful conduct.

82.     Plaintiff requests this Court enjoin Nordstrom from continuing to violate the CLRA as discussed herein and/or from violating the UCL in the future. Otherwise, Plaintiff, the Class and members of the general public may be irreparably harmed and/or denied effective and complete remedy if such an order is not granted.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the members of the Class demand a jury trial on all claims so triable and judgment against Defendant, Nordstrom, Inc., as follows:

A.     An order certifying that this action may be maintained as a class action, that Plaintiff be appointed Class Representative and Plaintiff's counsel be appointed Class Counsel;

B.     Pursuant to Plaintiff's first four causes of action, a judgment awarding Plaintiff and all members of the Class restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Nordstrom obtained from Plaintiff and the Class as a result of its unlawful, unfair and fraudulent business practices described herein;

C.     An order enjoining Nordstrom from continuing to violate the UCL, False Advertising Law and CLRA as described herein.

D.     A judgment awarding Plaintiff his costs of suit; including reasonable attorneys' fees pursuant to California Civil Code § 1780(d), Code of Civil Procedure § 1021.5 and as otherwise permitted by statute; and pre and post-judgment interest; and

E.     Such other and further relief as may be deemed necessary or appropriate.

DATED: September 2, 2014          LAW OFFICES OF WAYNE S. KREGER, P.A.

By: _____
    Wayne S. Kreger,
    Attorneys for Plaintiff

1

## **JURY TRIAL DEMANDED**

2  PLAINTIFF demands a jury trial on all triable issues.

3

4  DATED: September 2, 2014          LAW OFFICES OF WAYNE S. KREGER, P.A.

5

6

7  By: _____
       Wayne S. Kreger
8       Attorneys for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28