UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN BRANCA, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>vs.<br><br>NORDSTROM, INC.,<br><br>Defendant. | CASE NO. 14cv2062-MMA (JMA)<br><br>**ORDER:**<br><br>**GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS;**<br><br>[Doc. No. 9]<br><br>**DENYING AS MOOT PLAINTIFF'S MOTION TO STRIKE THE DECLARATION OF JOSEPH DUFFY**<br><br>[Doc. No. 13] |

Defendant Nordstrom, Incorporated ("Defendant" or "Nordstrom") moves to dismiss Plaintiff Kevin Branca's First Amended Complaint ("FAC") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Plaintiff filed an opposition, to which Defendant replied. *See* Doc. Nos. 12, 14. The Court found the matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1(d)(1). For the reasons set forth below, the Court **GRANTS IN PART and DENIES IN PART** Defendant's motion to dismiss.

## BACKGROUND

Plaintiff Kevin Branca is an individual and resident of San Marcos in San Diego County. Nordstrom is a Washington corporation with its principal place of business in Seattle, Washington. Nordstrom owns and operates Nordstrom Rack, which is a company-owned outlet and off-price retail division of Nordstrom. As of 2013, Nordstrom operated thirty seven Nordstrom Rack stores in California.

On July 12, 2013, Plaintiff purchased three items from a Nordstrom Rack store located in San Marcos, California. According to Plaintiff, he observed each item's price tag, which listed a "Compare At" price and then directly below listed a price significantly reduced by a corresponding percentage amount. Plaintiff claims that he was "enticed" by the idea of paying significantly less than the listed "Compare At" price charged outside of Nordstrom Rack, and therefore purchased one pair of cargo shorts for $29.97 with a "Compare At" price of $49.50, one hooded sweatshirt for $29.97 with a "Compare At" price of $65.00, and one pair of pants for $79.97 with a "Compare At" price of $150.00. Plaintiff claims that based on the price tags, he was lead to believe that he had saved 60%, 46%, and 53% respectively on his purchases. Plaintiff further claims that Nordstrom falsified the "Compare At" price, and this false comparison deceived him into paying full retail price with no discount. Finally, Plaintiff alleges that he would not have made these purchases but for the "Compare At" prices and corresponding percentage of savings listed on each price tag.

Plaintiff alleges generally that Nordstrom intentionally misrepresents the "existence, nature, and amount of price discounts" of Nordstrom Rack products, specifically those products manufactured either exclusively for Nordstrom Rack or third-party brands sold at Nordstrom Rack,[1] in order to advertise "sham" markdowns. Plaintiff further alleges that the "Compare At" price listed on

---

[1] Plaintiff expressly excludes those products sold at Nordstrom Rack that were previously offered for sale at Nordstrom main line retail stores.

1  Nordstrom Rack's price tag is neither the price at which Nordstrom formerly sold
2  the merchandise, nor the prevailing market retail price of the item within the
3  immediately preceding three months.
4        On September 2, 2014, Plaintiff filed this putative class action against
5  Nordstrom.  In the operative First Amended Complaint, Plaintiff brings claims for
6  violations of the California Unfair Competition Law ("UCL"), California Business
7  and Professions Code sections 17200, *et. seq.*; violations of California's False
8  Advertising Law ("FAL"), California Business and Professions Code sections
9  17500, *et. seq.*; and violations of the Consumers Legal Remedies Act ("CLRA"),
10 California Civil Code section 1750 *et seq*.  Nordstrom moves to dismiss Plaintiff's
11 First Amended Complaint pursuant to Federal Rules of Civil Procedure[2] 12(b)(1)
12 and 12(b)(6) on the grounds that Plaintiff lacks standing under the FAL, UCL, and
13 CLRA; fails to allege sufficient facts under both the general pleading standard as
14 well as Rule 9(b)'s heightened pleading standard; and fails to comply with the
15 CLRA notice requirements.

16                                             **LEGAL STANDARDS**

17 **A.    Rule 12(b)(1)**
18       Pursuant to Rule 12(b)(1), a party may seek dismissal of an action for lack of
19 subject matter jurisdiction "either on the face of the pleadings or by presenting
20 extrinsic evidence." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139
21 (9th Cir. 2003); *see also White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  Where
22 the party asserts a facial challenge, the court limits its inquiry to the allegations set
23 forth in the complaint.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th
24 Cir. 2004).  "If the challenge to jurisdiction is a facial attack . . . the plaintiff is
25 entitled to safeguards similar to those applicable when a Rule 12(b)(6) motion is
26 made."  *San Luis & Delta-Mendota Water Auth. v. U.S. Dep't of the Interior*, 905 F.
27
28       [2] All further reference to "Rule" refer to Federal Rules of Civil Procedure unless otherwise noted.

Supp. 2d 1158, 1167 (E.D. Cal. 2012) (internal citation and quotation omitted).

**B.     Rule 12(b)(6)**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). However, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face." Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard thus demands more than a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, the complaint "must contain allegations of underlying facts sufficient to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). The court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

In determining the propriety of a Rule 12(b)(6) dismissal, courts generally may not look beyond the complaint for additional facts. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.*; *see also Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). "However, [courts] are not required

to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998). Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects in the pleading. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

**C. Rule 9(b)[3]**

In alleging fraud or mistake, the plaintiff must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Failure to satisfy this heightened pleading requirement can result in dismissal of the claim. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). In general, the plaintiff's allegations of fraud or mistake must be "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Id.* at 1106. This heightened pleading standard requires the plaintiff to allege fraud or mistake by detailing "the who, what, when, where, and how" of the misconduct charged. *Id.* at 1106–07. In other words, the plaintiff must specify the time, place, and content of the alleged fraudulent or mistaken misconduct. *See id.*

## DISCUSSION[4]

**A. Standing**

As an initial matter, Defendant contends that Plaintiff lacks standing to sue under the FAL, UCL, and CLRA because he has failed to allege both economic injury and actual reliance. In response, Plaintiff maintains that he has sufficiently

---

[3] Both parties acknowledge that Rule 9(b)'s heightened pleading standard applies to Plaintiff's claims.

[4] Plaintiff moves to strike Exhibit C attached to the declaration of Joseph Duffy filed in support of Nordstrom's motion to dismiss, which contains excerpts from Nordstrom Rack's website dated November 14, 2014. *See* Doc. No. 9-2. Although Plaintiff captions this as a motion to strike, in reality it is simply an objection that Plaintiff should have raised in his opposition brief. Regardless, because the Court does not rely on the excerpts contained in Exhibit C in reaching its conclusion, it **DENIES AS MOOT** Plaintiff's motion to strike.

alleged both an economic injury and reliance for the purpose of standing because he would not have purchased the three items but for the "Compare At" price listed on the respective item's price tag.

"Under California's UCL and FAL, a private person has standing only if he or she 'has suffered injury in fact and has lost money or property as a result of the unfair competition.'" *Bruton v. Gerber Products Co.*, 961 F. Supp. 2d 1062, 1087 (N.D. Cal. 2013) (quoting Cal. Bus. & Prof. Code § 17204). The California Supreme Court has explained that for a plaintiff to have standing under the UCL or FAL, the plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury,* and (2) show that that economic injury was the result of, i.e., *caused by,* the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011) (emphasis in original). Likewise, to have standing to bring a claim under the CLRA, the plaintiff "must not only be exposed to an unlawful practice but also have suffered some kind of damage." *Bower v. AT & T Mobility, LLC*, 196 Cal. App. 4th 1545, 1556 (2011) (internal quotation marks omitted). Thus, as both parties here acknowledge, to have standing to sue under the FAL, UCL, or CLRA, the plaintiff must allege (1) that he suffered an economic injury, and (2) that he actually relied on the purported misrepresentation. *See In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1111–12 (S.D. Cal. 2011) (citing *Kwikset,* 51 Cal. 4th at 326–27).

Recently, the Ninth Circuit addressed the issue of standing in light of these requirements. *See Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1105 (9th Cir. 2013), *as amended on denial of reh'g and reh'g en banc* (July 8, 2013). With respect to the first element, the Ninth Circuit noted:

> The *Kwikset* Court explained precisely what a plaintiff must allege when he wishes to satisfy the economic injury requirement in a case involving false advertising: '[a] consumer who relies on a product label and challenges a misrepresentation contained therein can satisfy the standing requirement of section 17204 by alleging . . . that he or she would not have bought the product but for the misrepresentation.

*Hinojos,* 718 F.3d at 1104 (quoting *Kwikset*, 120 Cal. Rptr. 3d at 741).  The court held that the plaintiffs had sufficiently alleged economic injury by alleging "the advertised discounts conveyed false information about the goods he purchased, i.e., that the goods he purchased sold at a substantially higher price at Kohl's in the recent past and/or in the prevailing market" and "that he would not have purchased the goods in question absent this misrepresentation."  *Id.*

With respect to the second element of actual reliance, the Ninth Circuit in *Hinojos* found that "[p]leading that one would not have otherwise purchased the product but for the misleading advertising also satisfies the consumer's obligation to plead a causal link between the advertising and the alleged economic injury."  *Id.* at 1107 n.5.  The court noted that "as a practical matter, in cases such as these, Proposition 64's causation requirement . . . and the economic injury requirement are coextensive."  *Id.*

Here, Plaintiff alleges that he observed the purportedly fabricated "Compare At" price and corresponding percentage of savings listed on each price tag and, based on the representation of savings, he purchased three items.  Plaintiff further alleges that he "would not have made such purchase, or would not have paid the amount he did, but for Nordstrom's false representations of the former price of the items he purchased, as compared to the supposedly discounted 'Compare At' price and corresponding 'savings' at which Nordstrom Rack offered the items for sale."  FAC ¶ 13.  The Court finds that Plaintiff's allegations are sufficient to allege economic injury based on the "Compare At" list price for purposes of standing at this stage of the litigation.  *See, e.g.*, *Stanwood v. Mary Kay, Inc.*, 941 F. Supp. 2d 1212, 1219 (C.D. Cal. 2012)  ("Because Ms. Stanwood has alleged that but for Mary Kay's representations she would not have purchased specific Mary Kay products, she has sufficiently pleaded an injury in fact giving rise to standing."). Additionally, in light of the Ninth Circuit's reasoning that in practical terms the "causation requirement . . . and the economic injury requirement are coextensive[,]"

the Court finds Plaintiff has also sufficiently alleged actual reliance on the price tag for purposes of standing at this stage of the litigation. *See Hinojos*, 718 F.3d at 1107 n.5.

However, to the extent Plaintiff's claims arise from Nordstrom's website or from the Nordstrom Rack name itself, the Court finds Plaintiff has not sufficiently alleged economic injury or actual reliance for the purpose of standing. With respect to the website, Plaintiff alleges that by stating, "Why Shop the Rack? Because we have the most current trends and the brands you love for 30–70% off original prices each and every day[,]" Nordstrom Rack's website "falsely suggests that its products are equivalent to products sold at Nordstrom's main line retails stores," when in fact, such products are neither discounted off "original prices," nor sold by Nordstrom mainline stores. *See* FAC ¶ 5. However, Plaintiff does not allege that he observed—or was even aware of—Nordstrom Rack's website. Thus, Plaintiff alleges no facts to demonstrate, or even suggest, that he had would not have purchased the items absent the representations on the website. *See Stanwood*, 941 F. Supp. 2d at 1218 (finding the plaintiff had no standing to sue based on a website where "[s]he has not alleged that she viewed any of those sources, and therefore cannot link her injuries to those misrepresentations"). With respect to the Nordstrom Rack name, Plaintiff alleges generally that "the Nordstrom Rack name connotes a store selling discounted outlet clothing" and that "retailers like Nordstrom create the illusion of traditional outlet discounts and bargains by offering the made-for-outlet goods at prices reduced from fabricated, arbitrary, and false prices." FAC ¶ 26. However, Plaintiff does not allege any facts to suggest that he had this belief or that he relied on the Nordstrom Rack name in any way in making his purchases. Thus, to the extent Plaintiff's FAL, UCL, or CLRA claims arise from the Nordstrom website or the Nordstrom Rack name itself, Plaintiff has not sufficiently alleged standing to raise such claims.

//

**B.     Plaintiff's FAL, UCL, and CLRA claims**

Plaintiff alleges that Nordstrom Rack's price tags are false and misleading because neither Nordstrom's mainline stores nor other retailers formerly sold the same merchandise at the "Compare At" price. Nordstrom moves to dismiss this claim on the grounds that Plaintiff has failed to identify any false statement made by Nordstrom Rack, fails to plead that Nordstrom Rack knew or should have known of any false or misleading statement, and fails to identify a harm caused by the purportedly false statement.

**1.     California's FAL, UCL, and CLRA**

California's FAL prohibits any "unfair, deceptive, untrue, or misleading advertising." Cal. Bus. & Prof. Code § 17500. The FAL provides, in relevant part:

> No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

Cal. Bus. & Prof. Code § 17501. "This statute makes it unlawful for a business to disseminate any statement 'which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading[.]'" *Arevalo v. Bank of Am. Corp.*, 850 F. Supp. 2d 1008, 1023–24 (N.D. Cal. 2011) (internal citation omitted). "The statute has been interpreted broadly to encompass not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public. . . . Consequently, even a perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under this section." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1162 (9th Cir. 2012) (internal citations, quotations, and alterations omitted).

California's UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof.

1  Code § 17200.  The UCL provides a separate theory of liability under the
2  "unlawful," "unfair," or "fraudulent" prong.  *Stanwood*, 941 F. Supp. 2d at 1222
3  (citing *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007)).
4  "The UCL expressly incorporates the FAL's prohibition on unfair advertising as one
5  form of unfair competition."  *Hinojos*, 718 F.3d at 1103.  Accordingly, any violation
6  of the FAL also violates the UCL.  *Williams v. Gerber Products Co.*, 552 F.3d 934,
7  938 (9th Cir. 2008) (citing *Kasky v. Nike, Inc.,* 27 Cal. 4th 939, 950 (2002)).
8       Finally, California's CLRA prohibits "unfair methods of competition and
9  unfair or deceptive acts or practices."  Cal. Civ. Code § 1770.  Specifically, the
10 CLRA prohibits, among other things, "[a]dvertising goods or services with intent not
11 to sell them as advertised" and "[m]aking false or misleading statements of fact
12 concerning reasons for, existence of, or amounts of price reductions."  Cal. Civ.
13 Code § 1770(a)(9), (13).
14      **2.    The Reasonable Consumer Test**
15      To state a claim under the FAL, UCL, or the CLRA, the plaintiff must allege
16 the defendant's purported misrepresentations are likely to deceive a reasonable
17 consumer.  *See Williams*, 552 F.3d at 938 (explaining that unless the advertisement
18 at issue targets a particularly vulnerable group, courts must evaluate claims for false
19 or misleading advertising from the perspective of a reasonable consumer); *see also*
20 *Reid v. Johnson & Johnson*, — F.3d — , 2015 WL 1089583, at *4 (9th Cir. Mar. 13,
21 2015) ("It is true that violations of the UCL, FAL, and CLRA are evaluated from the
22 vantage point of a 'reasonable consumer.'"); *In re Sony Gaming Networks &*
23 *Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 967 (S.D. Cal. 2012) ("To
24 state a claim under the [UCL and FAL] one need not plead and prove the elements of
25 a tort. Instead, one need only show that 'members of the public are likely to be
26 deceived.'").  "A reasonable consumer is 'the ordinary consumer acting reasonably
27 under the circumstances.'"  *Davis*, 691 F.3d at 1161–62 (quoting *Colgan v.*
28 *Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663 (2006)).  "Likely to deceive

1 implies more than a mere possibility that the advertisement might conceivably be
2 misunderstood by some few consumers viewing it in an unreasonable manner.
3 Rather the phrase indicates that the ad is such that it is probable that a significant
4 portion of the general consuming public or of targeted consumers, acting reasonably
5 in the circumstances, could be mislead." *In re Sony*, 903 F. Supp. 2d at 967 (quoting
6 *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003)). "In
7 determining whether a statement is misleading under the statute, the primary
8 evidence in a false advertising case is the advertising itself." *Bruton*, 961 F. Supp. 2d
9 at 1092 n.20 (quoting *Colgan*, 135 Cal. App. 4th at 679) (internal quotation marks
10 omitted).

11   Finally, courts have recognized that "whether a business practice is deceptive
12 will usually be a question of fact not appropriate for decision on [a motion to
13 dismiss]." *Davis*, 691 F.3d at 1162 (brackets in original).

14   **3.   Analysis**

15   As currently pled, Plaintiff has failed to sufficiently allege that Nordstrom
16 intentionally fabricated the "Compare At" price listed on the Nordstrom Rack price
17 tags or that the Nordstrom Rack's price tag, standing alone, is likely to deceive
18 reasonable consumers into believing the listed "Compare At" price is the former
19 price at which Nordstrom or other retailers previously sold the same merchandise.

20   First, Plaintiff's allegations in his First Amended Complaint do not satisfy the
21 heightened pleading standard for fraud or misrepresentation under Rule 9(b).
22 Although Plaintiff acknowledges that Rule 9(b) applies to his claims, he merely
23 alleges that the "Compare At" prices "are fictional amounts intentionally selected so
24 that Nordstrom could advertise phantom markdowns" and that "Nordstrom
25 fraudulently concealed from, and intentionally failed to disclose to, Plaintiff, and
26 others similarly situated the truth about its 'Compare At' prices and advertised price
27 discounts from those supposedly former prices." FAC ¶¶ 6, 11. The Court finds
28 that these conclusory allegations are insufficient under Rule 9(b). Plaintiff fails to

allege any facts, much less with particularity, demonstrating how Nordstrom intentionally yet falsely represented that the "Compare At" price listed on Nordstrom Rack's price tags constitute the former price at which Nordstrom or other retailers previously sold the item.

Moreover, as currently pled, Plaintiff's allegations do not establish that Nordstrom Rack's price tags are likely to deceive reasonable consumers into believing the "Compare At" price is the former price at which Nordstrom or other mainline retailers previously sold the same merchandise. The Court finds Plaintiff's allegations regarding his own purchases illustrate this point. With respect to his own purchases, Plaintiff alleges that he observed Nordstrom Rack's price tag on the merchandise that lists a "Compare At" price and corresponding percentage of savings and that he purchased three items based on the representation of savings. Plaintiff then claims that the "Compare At" price must be false because "Nordstrom never intended, nor did it ever, sell the [items] at the represented 'Compare At' price." FAC ¶¶ 30, 32–33. Notably, however, Plaintiff does not allege that he believed the "Compare At" price represented a former price at which Nordstrom's mainline stores previously sold the merchandise, or that he purchased the item based on this assumption. Further, Plaintiff does not allege that he was exposed to or relied on any other representations by Nordstrom, such as other advertisements or marketing, that lead him to believe that the "Compare At" price was a former price at which Nordstrom sold the items. Finally, Plaintiff fails entirely to allege that he believed the "Compare At" price constituted a former price at which retailers other than Nordstrom had previously sold the same item, when in fact such stores did not.

Plaintiff relies on *Hinojos* for the proposition that other courts have found similar allegations likely to deceive reasonable consumers. However, the Court finds this reliance is misplaced. In *Hinojos*, the plaintiff's standing under the UCL and FAL was the only issue before the court, and the Ninth Circuit has expressly recognized that courts are not to consider the reasonable consumer test for the

purpose of standing. *See Hinojos*, 718 F.3d at 1104 n.3 ("The only issue before us, therefore, is whether this 'injury in fact' is an economic injury sufficient for purposes of statutory standing under the UCL and FAL."); *Reid*, — F.3d —, 2015 WL 1089583, at *4 ("But the reasonable consumer standard, unlike the individual reliance requirement described above, is not a standing requirement."). Second, the advertisement at issue in *Hinojos* expressly advertised an item as 50% off its "original" price, whereas here Nordstrom Rack's price tags do no such thing. *See Hinojos*, 718 F.3d at 1107.

Nordstrom cites to the district court's order in *Rubenstein v. The Neiman Marcus Group, LLC*, No. 14-7155-SJO (JPR), Doc. No. 23 (C.D. Cal. Dec. 12, 2014)[5] on this issue, which this Court finds instructive. In *Rubenstein*, the plaintiff brought similar claims against Neiman Marcus, alleging its company-owned outlet store Neiman Marcus Last Call's use of "Compared To" price tags mislead consumers into believing that clothing of identical quality was either previously sold at or would have been sold at flagship Neiman Marcus stores at the "Compared To" price. In determining whether Last Call's "Compared To" price tags were likely to deceive a reasonable consumer, the court looked to the FTC's Guides Against Deceptive Pricing, 16 C.F.R. § 233, as a useful guide as to how a reasonable consumer might interpret a price tag. The court explained:

> The Guides distinguish between "former price comparisons," "retail price comparisons," and "comparable value comparisons." Former price comparisons indicate that the retailer formerly offered the good at the listed price, and are indicated by language such as "Formerly sold at $ ___ or "Were $10, Now Only $7.50!" 16 C.F.R. §§ 233.1(b)-(c). Other

---

[5] Nordstrom requests that the Court take judicial notice of this order as well as the complaint filed in this case. *See* Def.'s RJN, Doc. No. 14-1, Exhs. A–B. When a court takes judicial notice of a matter of public record, such as another court's opinion, "it may do so not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." *Lee,* 250 F.3d at 690; *see also In re Easysaver Rewards Litig.*, 737 F. Supp. 2d 1159, 1166 (S.D. Cal. 2010). Here, pursuant to Federal Rule of Evidence 201, the Court takes judicial notice of the existence of the district court's order in *Rubenstein v. The Neiman Marcus Group LLP*, No. 14-7155-SJO-JPR, Doc. No. 23 (C.D. Cal. Dec. 12, 2014) [Exhibit B]. However, because the Court resolves the issues without reference to the complaint [Exhibit A], the Court declines to take judicial notice of Exhibit A at this time.

> language to indicate a former price includes "Regularly," "Usually," "Formerly" or "Reduced to." 16 C.F.R. §§ 233.1(e). Retail price comparisons indicate that the same article is sold by other merchants at a particular price, and are indicated by language such as "Price Elsewhere $10, Our Price $7.50" or "Retail Value $15.00, My Price $7.50." 16 C.F.R. §§ 233.2(a)-(b). Comparable value comparisons merely indicate that merchandise of "like grade and quality" are sold by the advertiser or others in the area at the listed price, and can be indicated by language such as "Comparable Value $15.00." 16 C.F.R. §§ 233.2(c).

The court found reasonable consumers would likely interpret the "Compared To" language of the price tag as a comparable value comparison in accordance with 16 C.F.R. § 233.2(c), not a former price comparison under § 233.1 as the plaintiff contended. Accordingly, the court found that the "Compared To" language on the price tag alone was not sufficient to support Plaintiff's claims that Neiman Marcus flagship stores sold the same goods at the "Compared To" price.

The Court finds this reasoning persuasive. Here, the crux of Plaintiff's claims is that the Nordstrom Rack's "Compare At" price tag, standing alone, would likely deceive reasonable consumers into believing the same item had previously been sold at Nordstrom or other mainline retailers at the "Compare At" price. In both the First Amended Complaint and his opposition brief, Plaintiff also relies on the FTC's Guide, asserting Nordstrom's fictitious "Compare At" prices constitute former price comparisons under § 233.1. However, as currently pled, the Court finds that Plaintiff has failed to allege sufficient facts demonstrating that Nordstrom Rack's "Compare At" price tag deceived him—much less reasonable consumers—into believing the "Compare At" price is the former price at which Nordstrom or other mainline retailers previously sold the merchandise. *See Williams*, 552 F.3d at 938 ("Under the reasonable consumer standard, [the plaintiff] must show that members of the public are likely to be deceived.") (internal citation and quotations omitted). To the contrary, based on the facts as alleged, it appears that reasonable consumers would likely interpret the "Compare At" language on the price tag, standing alone, as a comparable value comparison. *See, e.g. Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (finding the plaintiff failed to show that the promotion at issue

would likely deceive the public).

The Court finds Plaintiff has failed to state a claim for false or misleading advertising under the UCL, FAL, and CLRA. Accordingly, the Court **GRANTS** Nordstrom's motion to dismiss and **DISMISSES** Plaintiff's claims **with leave to amend.**

## C.   CLRA Mandatory Notice

Lastly, Nordstrom moves to dismiss Plaintiff's CLRA claim with prejudice on the grounds that Plaintiff has failed to comply with the CLRA notice requirements. Specifically, Nordstrom contends that Plaintiff's CLRA letter does not specify particular § 1770 violations, the goods at issue, or any details of Plaintiff's experience underlying his CLRA claim. Nordstrom also asserts that Plaintiff improperly filed suit for damages prior to providing appropriate notice of the violations at issue.

"The CLRA's notice requirement is not jurisdictional, but compliance with this requirement is necessary to state a claim." *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 949 (S.D. Cal. 2007). "Under the CLRA, a plaintiff must provide notice that he is anticipating a suit for damages 30 days before filing such suit." *In re Mattel, Inc.*, 588 F. Supp. 2d 1111, 1119–20 (C.D. Cal. 2008) (citing Cal. Civ. Code § 1782(a)). "A plaintiff may alternatively file suit for injunctive relief without notice, give notice of intent to amend the claims to add a claim for damages, and amend thirty days after the notice." *Id.* (citing Cal. Civ. Code § 1782(d)).

Here, Plaintiff filed his original complaint on September 2, 2014. That same day, Plaintiff sent a letter to Nordstrom with the original complaint attached, so Nordstrom received notice of the substance of Plaintiff's CLRA claims, including the particular violations, the goods at issue, and details of Plaintiff's purchases. Moreover, the original complaint does not seek damages under the CLRA. *See* Doc. No. 1 ¶¶ 82, B. To the contrary, in the original complaint, Plaintiff sought injunctive relief only under the CLRA, and expressly limited his prayer for restitution to his

first four causes of actions under the FAL and UCL. *See id.* Then, on October 10, 2014—over thirty days later after commencing the action and providing notice to Nordstrom—Plaintiff amended his complaint to allege that he provided proper notice as to his CLRA claim, including the opportunity for Defendant to cure which Defendant purportedly did not do. Additionally, Plaintiff amended his claim for restitution so that it is no longer expressly limited to his FAL and UCL claims.

The Court finds that Plaintiff provided sufficient notice of his CLRA claim and therefore **DENIES** Nordstrom's motion to dismiss on this ground.

## CONCLUSION

For the reasons set forth above, the Court **GRANTS IN PART and DENIES IN PART** Defendant's motion to dismiss and **DENIES AS MOOT** Plaintiff's motion to strike. Plaintiff shall file a Second Amended Complaint that cures the deficiencies discussed herein within 14 days of the date of this Order.

**IT IS SO ORDERED.**

DATED: March 19, 2015

*/s/ Michael M. Anello*

Hon. Michael M. Anello
United States District Judge