1

1          UNITED STATES DISTRICT COURT

2          SOUTHERN DISTRICT OF CALIFORNIA

3

4    KEVIN BRANCA, INDIVIDUALLY  )
     AND ON BEHALF OF ALL OTHERS )   CASE NO. 14CV2062-MMA(AGS)
5    SIMILARLY SITUATED,         )
                                 )
6              PLAINTIFF,        )   SAN DIEGO, CALIFORNIA
                                 )   WEDNESDAY,
7    VS.                         )   JUNE 14, 2017
                                 )   2:00 P.M.
8    NORDSTROM, INC.,            )
                                 )
9              DEFENDANT.        )
     _____)

10

11

12          TRANSCRIPT OF DISCOVERY HEARING
        BEFORE THE HONORABLE ANDREW G. SCHOPLER
13           UNITED STATES MAGISTRATE JUDGE

14

     APPEARANCES:
15

     FOR THE PLAINTIFF:    KOPELOWITZ, OSTROW, FERGUSON
16                         WEISELBERG, GILBERT
                           BY:  ARI ROBERT KAUFMAN, ESQ.
17                         2800 PONCE DE LEON BOULEVARD
                           SUITE 1100
18                         CORAL GABLES, FLORIDA  33134

19   FOR THE DEFENDANT:    SHEPPARD, MULLIN, RICHTER & HAMPTON
                           BY:  SHANNA M. PEARCE, ESQ.
20                         12275 EL CAMINO REAL
                           SUITE 200
21                         SAN DIEGO, CALIFORNIA  92130

22   TRANSCRIPT ORDERED BY: AVI ROBERT KAUFMAN, ESQ.

23   TRANSCRIBER:          CAMERON P. KIRCHER

24   PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING;
     TRANSCRIPT PRODUCED BY TRANSCRIPTION.
25

COMPUTER-AIDED TRANSCRIPTION

2

```
 1              SAN DIEGO, CALIFORNIA - WEDNESDAY, JUNE 14, 2017
 2                            2:00 P.M.
 3              THE COURT:  GOOD AFTERNOON, EVERYONE.
 4              MS. PEARCE:  GOOD AFTERNOON, YOUR HONOR.
 5              MR. KAUFMAN:  GOOD AFTERNOON, YOUR HONOR.
 6              THE CLERK:  CALLING MATTER NO. 2, 14CV2062-MMA(AGS),
 7     BRANCA VERSUS NORDSTROM, INC., SET FOR DISCOVERY HEARING.
 8              IF THE PARTIES CAN PLEASE STATE THEIR APPEARANCE FOR
 9     THE RECORD.
10              MR. KAUFMAN:  ON BEHALF OF THE PLAINTIFF, AVI
11     KAUFMAN.
12              MS. PEARCE:  ON BEHALF OF DEFENDANT, SHANNA
13     PEARCE.
14              THE COURT:  ALL RIGHT.  THANK YOU FOR BEING HERE BY
15     TELEPHONE, MR. KAUFMAN, AND IN PERSON, MS. PEARCE.
16              I WILL START OFF BY GIVING THE PARTIES MY
17     PRELIMINARY THOUGHTS ON THE CASE.  THESE WOULD ONLY BE
18     TENTATIVE RULINGS.  I'D BE HAPPY TO HEAR ARGUMENT FROM
19     EVERYONE.
20              WITH REGARD TO THE PROCEDURAL ISSUES THAT HAVE BEEN
21     RAISED BY THE PARTIES, IT DOES APPEAR THAT THE PLAINTIFF'S
22     RESPONSES WERE LATE AND UNVERIFIED, AND THERE DOES NOT APPEAR
23     TO BE GOOD CAUSE BASED ON THIS RECORD.  SO ON THAT BASIS, I
24     COULD GRANT THE MOTION OUTRIGHT.
25              I WOULD POINT OUT THAT THE VERIFICATION APPEARS TO
```

1    STILL BE DEFICIENT, IN THAT UNDER RULE 33(B), IT'S REQUIRED

2    THAT THEY NOTARIZE OR VERIFY NOT ONLY THE IDENTITY OF THE

3    SIGNATORY BUT ALSO THE TRUTH OF THE RESPONSES.

4           AND IN THIS CASE, IT APPEARS THAT, BELATEDLY, THE

5    IDENTITY OF THE SIGNATORY WAS NOTARIZED BUT NOT THE TRUTH OF

6    THE RESPONSES.  SO AS I SAID, ON THIS BASIS I COULD GRANT THE

7    MOTION OUTRIGHT I THINK ON THAT PROCEDURAL GROUND.

8           PLAINTIFF ALSO RAISES A PROCEDURAL OBSTACLE HERE,

9    WHICH IS THAT NORDSTROM FAILED TO MEANINGFULLY MEET AND

10   CONFER ABOUT THIS DISPUTE BEFORE BRINGING IT TO THE COURT'S

11   ATTENTION.

12          THE PARTIES HAVE DIFFERING VIEWS ABOUT THE EXTENT TO

13   WHICH THEY DID DISCUSS THIS DISPUTE, BUT WHAT SEEMS

14   COMPELLING TO THE COURT IS THAT NONE OF THE EXCHANGES THAT

15   HAVE BEEN BROUGHT TO MY ATTENTION WOULD QUALIFY AS

16   MEET-AND-CONFER EFFORTS UNDER OUR LOCAL RULES.

17          THE LOCAL RULES CONTEMPLATE A VERBAL MEETING, NOT AN

18   EXCHANGE OF LETTERS OR E-MAILS.  UNDER CIVIL LOCAL RULE

19   26.1(A), IT STATES THAT IF COUNSEL HAVE OFFICES IN THE SAME

20   COUNTY, THEY ARE TO MEET IN PERSON.  IF COUNSEL HAVE OFFICES

21   IN DIFFERENT COUNTIES, THEY ARE TO CONFER BY TELEPHONE.

22   UNDER NO CIRCUMSTANCES MAY THE PARTIES SATISFY THE

23   MEET-AND-CONFER REQUIREMENT BY EXCHANGING WRITTEN

24   CORRESPONDENCE.

25          AND IT APPEARS, BASED ON WHAT I HAVE BEEN PRESENTED,

1    THAT THE MEET-AND-CONFER EFFORTS WERE DONE -- TO THE EXTENT

2    THAT THEY WERE ATTEMPTED, THEY WERE DONE THROUGH WRITTEN

3    CORRESPONDENCE, NOT THROUGH VERBAL EXCHANGES.  SO ON THIS

4    BASIS, SUBJECT TO THE GOOD CAUSE EXCEPTION, I COULD DENY THE

5    MOTION OUTRIGHT.

6         SO SINCE THE PARTIES HAVE DUELING PROCEDURAL

7    DEFICIENCIES THAT COULD DOOM THEIR CASES, I WILL PROCEED TO

8    THE MERITS AND GIVE YOU MY THOUGHTS ON THE MERITS, BUT I

9    CERTAINLY AM INTERESTED IN THE PARTIES' THOUGHTS ON THE

10   PROCEDURAL HURDLES AS WELL.

11        STARTING FIRST WITH INTERROGATORIES 2, 3, 4, 11, 12

12   AND 16.  INTERROGATORY 2 REQUESTS PLAINTIFF'S NORDSTROM'S

13   PURCHASES.  INTERROGATORY 3 REQUESTS PRICE TAGS.

14   INTERROGATORY 4 REQUESTS PRICE DISCOUNTS ABOVE OR ADJACENT TO

15   THE ITEMS PURCHASED.

16        INTERROGATORIES 11 AND 12 DEAL WITH PURCHASE HISTORY

17   AT NON-NORDSTROM RETAILERS OF ITEMS OF THE SAME BRAND AS

18   THOSE PURCHASED FROM NORDSTROM. AND INTERROGATORY 16 PERTAINS

19   TO RETURN INFORMATION FOR NORDSTROM PURCHASES.

20        IT APPEARS TO ME THAT INTERROGATORIES 2, 3, 4 AND

21   16, PLAINTIFF WOULD BE REQUIRED TO SUPPLEMENT RESPONSES --

22   THE RESPONSES AND STATE THAT THERE ARE NO RETURNS OR NO OTHER

23   ADS, IF THAT'S THE CASE.  PLAINTIFF'S COUNSEL'S

24   REPRESENTATIONS SIMPLY ARE INSUFFICIENT AND WOULD HAVE TO

25   APPROPRIATELY VERIFY ALL OF THAT CORRECTLY UNDER RULE 33(B).

5

1          THE RULES EXPLICITLY PERMIT RAW DATA OR BUSINESS

2     RECORDS TO REPLACE INTERROGATORY ANSWERS.  SO THERE IS

3     NOTHING IMPROPER ABOUT PRODUCING THAT RAW DATA RATHER THAN

4     GIVING INTERROGATORY ANSWERS.

5          IT IS TROUBLING, IF THE ALLEGATION IS TRUE, THAT

6     PLAINTIFF PROMISED A FULL INVENTORY AND INSTEAD GAVE A RAW

7     DATA DUMP.  AND THAT'S NOT SOMETHING THE COURT CONDONES.  BUT

8     UNDER THE RULES, LOOKING PURELY AT THE DISCOVERY QUESTION,

9     THERE IS NOTHING WRONG WITH PRODUCING RAW DATA RATHER THAN

10    INTERROGATORY ANSWERS.

11         TURNING TO INTERROGATORIES 11 AND 12, I TENTATIVELY

12    WOULD FIND THAT -- LOOKING TO THE MERITS HERE, THAT THOSE

13    NEED TO BE ANSWERED.  IF PLAINTIFF HAS BEEN BUYING SIMILAR OR

14    IDENTICAL PRODUCTS FROM OTHER OUTLETS AT SIMILAR PRICES, THEN

15    THE CLAIM THAT PLAINTIFF WAS DECEIVED BY NORDSTROM'S PRICING

16    POLICIES WOULD BE LESS LIKELY.  THEREFORE, THIS INFORMATION

17    WOULD BE RELEVANT TO NORDSTROM'S DEFENSE.

18         TURNING NOW TO INTERROGATORIES 5, 6, 7, 9 AND 10.

19    INTERROGATORY 5 REQUESTS PLAINTIFF TO GIVE THE VALUE OF THE

20    ITEMS HE PURCHASED IF IT IS DIFFERENT THAN THE PURCHASE

21    PRICE.  INTERROGATORY 6 REQUESTS THE APPROPRIATE COMPARE AT

22    PRICES.  INTERROGATORY 7 REQUESTS THE BASES FOR HIS

23    APPROPRIATE "COMPARE AT" PRICES.  INTERROGATORY 9 REQUESTS

24    WHAT PLAINTIFF BELIEVES REASONABLE CONSUMERS THINK COMPARE AT

25    PRICES MEAN.  AND INTERROGATORY 10 REQUESTS THE BASES FOR

6

1    THAT BELIEF.

2            DEFENDANT I BELIEVE IS CORRECT THAT PLAINTIFF FAILED

3    TO RESPOND ADEQUATELY TO THESE INTERROGATORIES, BUT I WOULD

4    TENTATIVELY FIND THAT THE QUESTIONS THEMSELVES ARE IMPROPER.

5    IT APPEARS THAT THE QUESTIONS ARE NOT RELEVANT AND THAT THEY

6    DO REQUEST EXPERT TESTIMONY AS TO VALUATION AND REASONABLE

7    CONSUMER BEHAVIOR.  SO LOOKING TO THE MERITS OF THOSE, I

8    WOULD TENTATIVELY DENY THE REQUEST FOR SUPPLEMENTATION.

9            THE ISSUE TURNS A LITTLE DIFFERENTLY WITH REGARD TO

10   REQUESTS FOR PRODUCTION 10, 11, 13, 14 AND 19 THROUGH 23.

11           FOR THE RECORD, THOSE ARE IDENTIFIED AS FOLLOWS:

12   REQUEST FOR PRODUCTION 10, 11, 13 AND 14 SEEK DOCUMENTS

13   SUPPORTING PLAINTIFF'S CONTENTIONS THAT "COMPARE AT" PRICES

14   AND PERCENTAGE SAVINGS PRICES WERE DECEPTIVE OR INACCURATE.

15           REQUEST FOR PRODUCTIONS 19 AND 20 SEEK DOCUMENTS

16   CONCERNING PLAINTIFF'S CONTENTIONS CONCERNING REASONABLE

17   CONSUMERS' UNDERSTANDING OF COMPARE AT PRICES AND DOCUMENTS

18   SUPPORTING PLAINTIFF'S CONTENTION THAT HE MEETS THE

19   REQUIREMENTS FOR CLASS CERTIFICATION.

20           AND REQUEST FOR PRODUCTION 21, 22 AND 23 ASKS FOR

21   ARTICLES, SURVEYS, STUDIES AND RESEARCH THAT PLAINTIFF WILL

22   RELY ON TO SUPPORT HIS CLASS CERTIFICATION CONCERNING

23   COMPARATIVE PRICING'S EFFECT ON CONSUMERS.

24           THE MAIN DISPUTE HERE APPEARS TO BE OVER REQUEST FOR

25   PRODUCTION 22, IN WHICH DEFENDANT SPECIFICALLY SEEKS

```
 1     INFORMATION ON THE MARONICK SURVEY BY PLAINTIFF'S EXPERT,

 2     DR. MARONICK.

 3          AND AS THIS IS VERY LIKELY TO BE MISTRANSCRIBED,

 4     I'LL SPELL THAT OUT FOR THE RECORD.  DR. MARONICK IS SPELLED

 5     M, AS IN MICHAEL, M-A-R-O-N-I-C-K.

 6          AND THERE IS ARGUMENT HERE ABOUT WHETHER

 7     DR. MARONICK'S SURVEY AND UNDERLYING INFORMATION IS

 8     PRIVILEGED OR WHETHER THAT PRIVILEGE HAS BEEN WAIVED BECAUSE

 9     IT WAS RELIED ON IN THE THIRD AMENDED COMPLAINT.

10          MY TENTATIVE THOUGHTS ON THESE LAST SET OF ISSUES

11     ARE AS FOLLOWS:  I BELIEVE THAT -- PUTTING ASIDE THE MARONICK

12     SURVEY FOR THE MOMENT, THAT PLAINTIFF SHOULD BE REQUIRED TO

13     SUPPLEMENT HIS RESPONSES TO BE RESPONSIVE TO THE QUESTIONS

14     ASKED, EVEN IF THE RESPONSE IS AS HE CURRENTLY CLAIMS THAT

15     THERE IS NOTHING FURTHER TO PRODUCE; AND THAT PLAINTIFF MUST

16     APPROPRIATELY VERIFY THAT RESPONSE.

17          IT APPEARS THAT THE REQUEST FOR PRODUCTION, THESE

18     REQUESTS FOR PRODUCTION IN GENERAL ARE PERMISSIBLE UNDER THE

19     RULES.

20          TURNING FINALLY TO REQUEST FOR PRODUCTION 22

21     REGARDING THE MARONICK SURVEY, DEFENDANT ARGUES THAT THE WORK

22     PRODUCT PRIVILEGE HAS BEEN WAIVED, AS I MENTIONED EARLIER

23     BECAUSE OF PLAINTIFF'S DISCLOSURE OF AND RELIANCE ON THAT

24     SURVEY IN THE THIRD AMENDED COMPLAINT AND IN ANOTHER LAWSUIT

25     AGAINST LEVI STRAUSS.
```

1    PLAINTIFF ARGUES THAT IT IS, IN FACT, PRIVILEGED,

2    BUT I THINK DEFENDANT IS CORRECT THAT THE FACT THAT IT'S

3    PRIVILEGED IS PRESUPPOSED IN ANY WAIVER ARGUMENT.

4         AT THIS POINT, BASED ON WHAT'S BEFORE THE COURT, IT

5    APPEARS THAT ANY PRIVILEGE HAS BEEN WAIVED, AND THAT REQUEST

6    FOR PRODUCTION 22 WOULD NEED TO BE ANSWERED IN FULL.  BUT I

7    CERTAINLY INVITE THE PARTIES TO ADDRESS THAT IN ORAL ARGUMENT

8    AS TO RFP 22.

9         AND AS TO ALL OF THESE POINTS, AS I MENTIONED, THESE

10   ARE MERELY MY TENTATIVE RULINGS.  SO I WILL GIVE -- I WILL

11   NOW TURN THE FLOOR OVER TO THE PARTIES.  AND SINCE THIS IS

12   NORDSTROM'S MOTION, I WILL GIVE THEM FIRST ARGUMENT.

13        MS. PEARCE:  THANK YOU, YOUR HONOR.

14        WOULD YOU LIKE ME UP AT THE PODIUM?

15        THE COURT:  WHEREVER YOU FEEL MOST COMFORTABLE.

16        MS. PEARCE.

17        MS. PEARCE:  THANK YOU.  GOOD AFTERNOON, YOUR HONOR.

18        AS TO THE PROCEDURAL ISSUES, WE DID, IN FACT, HAVE A

19   TELEPHONIC MEET AND CONFER.  AFTER THE INITIAL LETTER WAS

20   SENT, THERE WAS A TELEPHONE CONVERSATION TO DISCUSS THE

21   DEFICIENCIES WHICH HAD BEEN OUTLINED IN THE LETTER.

22        THE COURT:  WHEN WAS THAT?

23        MS. PEARCE:  THAT OCCURRED -- AVI, DO YOU HAPPEN TO

24   HAVE THAT?  OR -- I'M SORRY.  MR. KAUFMAN, DO YOU HAPPEN TO

25   HAVE THAT?

1    MR. KAUFMAN:  NO, I DON'T.  I APOLOGIZE.  I DON'T

2    HAVE THE EXACT DATE OF THAT.

3         I WILL VERIFY THERE WAS A TELEPHONIC MEET AND

4    CONFER, THE RESULTS OF WHICH ARE DISPUTED BETWEEN THE PARTIES

5    AND WHICH CAUSED SOME OF THE ADDITIONAL CONFUSION FROM OUR

6    PERSPECTIVE WITH REGARD TO THE SUPPLEMENTATION, AND

7    PARTICULARLY WITH -- YOU KNOW, RESULTING IN OUR DESIRE FOR

8    FURTHER MEET AND CONFERS AFTER THE SUPPLEMENTATION AFTER THEY

9    INDICATED TO US JUST BASICALLY, THIS ISN'T GOOD ENOUGH.

10   WE'RE FILING A MOTION TO COMPEL.

11        WE THOUGHT, WELL, PERHAPS WE SHOULD HAVE ANOTHER

12   CONVERSATION, SOME OF THESE THINGS BEING RESOLVABLE.

13        THE COURT:  OKAY.  THANK YOU.

14        MS. PEARCE:  YOUR HONOR, IT TOOK PLACE ON

15   APRIL 17TH, 2017.

16        IN LIGHT OF YOUR RECENT CHAMBER RULES ABOUT THE

17   TIMING OF BRINGING THE MOTION TO COMPEL AND THE FACT THAT THE

18   DEFICIENCIES WHICH WOULD BE DISCUSSED IN A FURTHER

19   CONVERSATION HAD ALREADY BEEN OUTLINED IN THE LETTER AND HAD

20   BEEN DISCUSSED PRIOR TO THE SUPPLEMENTAL RESPONSES, WE DIDN'T

21   SEE THAT THERE WAS ANY MORE TO BE ACCOMPLISHED IN A FURTHER

22   DISCUSSION.

23        THE COURT:  OKAY.  DO YOU WANT TO ADDRESS THE

24   MERITS?

25        MS. PEARCE:  SURE.

1              AS TO INTERROGATORIES NOS. 2 AND 3, DEFENDANT'S VIEW

2       IS THAT IN THIS INSTANCE, A PRODUCTION OF DOCUMENTS IS NOT

3       SUFFICIENT IN LIEU OF TESTIMONY OUTLINING THE PURCHASES

4       BECAUSE OF THE FACT THAT THERE SEEMS TO BE SOME DISCREPANCY

5       BETWEEN THE RECORDS WHICH HAVE BEEN PRODUCED AND A

6       TRANSACTION HISTORY WHICH THE LIMITED INFORMATION THAT

7       DEFENDANT HAS RECEIVED HAS ALLOWED IT TO PRODUCE BASED UPON

8       ITS KNOWLEDGE OF THE PLAINTIFF'S NAME.

9              AND, FURTHERMORE, THAT THERE IS A PRICE TAG FOR AN

10      ITEM IN THE THIRD AMENDED COMPLAINT FOR WHICH NO RECEIPT HAS

11      BEEN PRODUCED.

12             SO IN THIS INSTANCE, THOUGH PERHAPS IN SOME

13      SITUATIONS A PRODUCTION OF RECORDS WOULD BE ADEQUATE, WE

14      DON'T BELIEVE THAT IT IS IN THIS CASE AN ADEQUATE SUBSTITUTE

15      FOR HIS SWORN STATEMENTS OUTLINING HIS PURCHASES.

16                  THE COURT:  ARE YOU GOING TO BE DEPOSING HIM?

17                  MS. PEARCE:  YES.

18                  THE COURT:  AND WHEN IS THAT?

19                  MS. PEARCE:  A DATE HAS NOT BEEN SET.  WE WERE

20      HOPING TO RESOLVE THIS ISSUE BEFORE CONDUCTING THE

21      DEPOSITION.

22                  THE COURT:  OKAY.

23                  MS. PEARCE:  I IMAGINE YOU DON'T WANT ME TO DISCUSS

24      4 AND 16 SINCE I AGREE WITH THE TENTATIVE, OR 11 AND 12,

25      THOUGH I'D BE HAPPY TO RESPOND TO ANY ARGUMENT FROM PLAINTIFF

1   ON THOSE.

2           THE COURT:  OKAY.

3           MS. PEARCE:  AS TO INTERROGATORIES 5 TO 7, THE

4   DEFENDANT'S VIEW IS THAT THESE ARE APPROPRIATE CONTENTION

5   INTERROGATORIES BECAUSE THEY ASK FOR THE INFORMATION -- THE

6   FACTS WHICH DEMONSTRATE THE ALLEGATIONS IN THE COMPLAINT, THE

7   CONCLUSORY ALLEGATIONS ABOUT DECEPTION AND RELIANCE AND HIS

8   HARM.

9           AND SO IN THAT WAY WE FEEL THAT HIS CONTENTION AS

10  TO, YOU KNOW, WHAT -- YOU KNOW, IF, IN FACT, IT'S TRUE THAT

11  HE HAS NOT RETAINED ANY EXPERTS YET ON THESE ISSUES, THEN

12  PRESUMABLY THERE WAS SOME FACTUAL BASIS UPON WHICH HE

13  BELIEVED THAT THESE PRICES WERE DECEPTIVE AND THAT HE HAD

14  BEEN HARMED.  AND WE BELIEVE THAT THAT'S WHAT INTERROGATORIES

15  5 AND 7 ARE AIMED TO GET AT.

16          AND INTERROGATORIES 9 AND 10 GO TO THE LEGAL CLAIM

17  AS IT WAS MADE IN THE COMPLAINT, THE ALLEGATION THAT THESE

18  PRICES ARE DECEPTIVE TO CONSUMERS.  THAT CONTENTION WAS MADE,

19  AND THIS SEEKS THE FACTS AND THE EVIDENCE UNDERLYING THAT

20  CONTENTION.

21          AND IT'S TRUE, YOU KNOW, IF -- IF, IN FACT,

22  DR. MARONICK'S WORK WAS A PART OF THAT BASIS FOR WHICH THAT

23  CONTENTION WAS MADE IN THE COMPLAINT, THEN WE BELIEVE THAT

24  THOSE FACTS AND EVIDENCE UNDERLYING THAT OPINION MUST BE

25  DISCLOSED.

1          AND IN ANY EVENT, THE RESPONSE AS IT IS NOW, WHICH

2     IS WHAT THE PLAINTIFF HIMSELF BELIEVED THE PRICES TO MEAN IS

3     NOT RESPONSIVE TO THE QUESTION THAT WAS POSED.

4          THE COURT:  I AGREE THAT THE RESPONSE IS NOT

5     ADEQUATE, BUT IT DOES SEEM TO ME, AS I MENTIONED IN MY

6     TENTATIVE, THAT THIS IS REQUESTING EXPERT TESTIMONY ON

7     VALUATION AND REGIONAL CONSUMER BEHAVIOR.

8          AND YOU'RE GETTING SOME OF THIS SAME INFORMATION

9     FROM YOUR REQUEST FOR PRODUCTION --

10          MS. PEARCE:  CORRECT.

11          THE COURT:  -- AREN'T YOU?

12          MS. PEARCE:  YES.  THESE ARE IN SOME WAY

13     DUPLICATIVE.  WE'RE REALLY -- THE CONTENTION HAS ALREADY BEEN

14     MADE IN THE COMPLAINT.  SO WE'RE SEEKING THE FACTS -- I MEAN,

15     UNLESS HE HAS A CONTENTION NOW WHICH IS DIFFERENT FROM THAT

16     MADE IN THE COMPLAINT, WE'RE SEEKING THE FACTS AND THE

17     EVIDENCE WHICH UNDERLY THAT CONTENTION.

18          THE COURT:  BUT TO THE EXTENT IF HE, HIMSELF, IS NOT

19     AN EXPERT, THEN HE WOULD HAVE TO BE RELYING ON DOCUMENTS, IT

20     SEEMS TO ME, TO COME TO THOSE CONCLUSIONS, AND THOSE WOULD BE

21     REQUIRED BY THE REQUEST FOR PRODUCTION; CORRECT?

22          MS. PEARCE:  IF THAT'S THE WHOLE OF THE BASIS FOR

23     THAT CONTENTION, THEN ABSOLUTELY IT'S COVERED BY RFP 22.  BUT

24     IF IT WEREN'T, WE WOULD WANT THAT TO BE DISCLOSED, IF HE HAD

25     AN INDEPENDENT FACTUAL OR EVIDENTIARY BASIS FOR THAT

1    CONTENTION.

2            THE COURT:  AND DID YOU HAVE ANY ARGUMENT ON THE

3    REQUEST FOR PRODUCTION, OR DID YOU --

4            MS. PEARCE:  WE AGREE WITH THE TENTATIVE ON THE

5    REQUEST FOR PRODUCTION.

6            THE COURT:  ALL RIGHT.  THANK YOU, MS. PEARCE.

7            OKAY.  MR. KAUFMAN.

8            MR. KAUFMAN:  THANK YOU, JUDGE SCHOPLER.

9            IF I CAN BEGIN WITH THE WAIVER ISSUE.  I THINK THERE

10   IS TWO ISSUES TO BE ADDRESSED.  THE FIRST IS WHETHER OR NOT

11   THERE IS GOOD CAUSE, AND THE SECOND IS WHAT IS THE EFFECT.

12   AND WE SUBMIT THERE WASN'T.  WE BELIEVE THAT THERE WAS GOOD

13   CAUSE, GIVEN THE BACK-AND-FORTH BETWEEN THE PARTIES RELATING

14   TO THE DEFICIENCIES THAT WE PERCEIVED IN DEFENDANT'S

15   RESPONSES.

16           WE RECEIVED THE REQUEST FOR PRODUCTION AND THE

17   INTERROGATORIES DURING WHAT ENDED UP BEING A FOUR-AND-A-HALF

18   MONTH MEET AND CONFER, AND, YOU KNOW, IT WAS LOST IN THE

19   SHUFFLE ON OUR END BECAUSE WE SORT OF LOOPED IT WITH THAT

20   ONGOING MEET AND CONFER.  SO IT WAS A MISTAKE, BUT IT WAS A

21   WELL-MEANING MISTAKE, YOUR HONOR.

22           SO WE BELIEVE ON THAT BASIS, THERE IS SUFFICIENT

23   EVIDENCE TO FIND GOOD CAUSE.  SO EVEN IF THE COURT FINDS --

24           THE COURT:  WELL, WALK ME THROUGH THAT.  HOW DOES --

25   I'M NOT SURE HOW ONE HAS ANYTHING TO DO WITH THE OTHER.  WHY

1    WOULD YOU NOT --

2         MR. KAUFMAN:  YOUR HONOR -- YOUR HONOR, IN OUR

3    CONVERSATIONS, WE WERE JUST TALKING ABOUT DISCOVERY

4    GENERALLY, AND WE CONTINUOUSLY WORKED EXCHANGING -- WITH

5    DOCUMENTS ON BOTH SIDES OF THINGS, YOU KNOW, OTHER REQUESTS

6    OUTWARD AND REQUESTS INWARD.

7         IT WAS A MISTAKE, YOUR HONOR.  THERE IS NOT A GREAT

8    EXPLANATION, BUT THAT'S THE EXPLANATION THAT THERE IS.

9         THE COURT:  ALL RIGHT.  WHAT ABOUT WITH REGARD TO

10   THE VERIFICATION, WHY WOULDN'T THAT SIMPLY HAVE FOLLOWED THE

11   REQUIREMENTS OF RULE 33(B) REGARDLESS OF WHAT CONVERSATIONS

12   YOU WERE HAVING WITH OPPOSING COUNSEL?

13        MR. KAUFMAN:  YOUR HONOR, ADMITTEDLY, IT ABSOLUTELY

14   SHOULD HAVE.

15        I THINK THE CONFUSION OCCURRED BECAUSE MR. BRANCA IS

16   THE FINANCE DIRECTOR OF THE CITY OF CARLSBAD.  THERE IS A

17   NOTARY IN HIS OFFICE, AND IT IS HER PREFERENCE --

18   NOTWITHSTANDING WHAT WE SENT TO MR. BRANCA WAS AN APPROPRIATE

19   VERIFICATION, IT WAS HER PREFERENCE TO COMPLETE THIS FORM.

20        UNTIL I HAD A FULL GRASP OF THE REPLY, I DIDN'T EVEN

21   UNDERSTAND.  WE'RE IN THE PROCESS OF RESOLVING IT, AND WE

22   FULLY INTEND TO PROVIDE AN APPROPRIATE VERIFICATION.  AND

23   THERE WAS NO INTENT TO PLAY GAMES WITH THE VERIFICATION.

24   AGAIN, YOU KNOW, PERHAPS A LITTLE BIT SLOPPY, BUT NOTHING

25   MORE THAN THAT, YOUR HONOR.

1          THE COURT:  OKAY.

2          MR. KAUFMAN:  BUT GOING ON TO THE ISSUE OF EVEN IF

3     THE COURT WERE TO FIND WAIVER, WHAT THE EFFECT IS.  THE

4     TOWNSEND (PHONETIC) CASE THAT IS CITED BY -- WELL, PUTTING

5     ASIDE THE TOWNSEND CASE, THE COURT HAS ALREADY FOUND THAT IF

6     THERE IS A FAILURE TO DISCHARGE THE MEET-AND-CONFER

7     OBLIGATIONS, THERE IS A SUFFICIENT BASIS FOR IGNORING --

8     (INAUDIBLE).

9          BUT EVEN IF THE COURT WERE TO FIND THERE ISN'T, THE

10    WAIVER WILL BE ONLY AS TO OBJECTIONS.  THAT'S THE CASE LAW

11    CITED BY NORDSTROM.  THAT'S THE SHEA VS. BEST BUY CASE.  AND

12    IT SPECIFICALLY DELINEATES BETWEEN OBJECTIONS AND VALID

13    PRIVILEGES, AND DOESN'T FIND WAIVER OF VALID PRIVILEGES AS A

14    MATTER OF, YOU KNOW, IMMEDIATE HAPPENSTANCE BY THE FAILURE TO

15    TIMELY RESPOND.

16         NOW, EVEN IF THE COURT WERE TO FIND THAT THERE

17    WAS A WAIVER OF OBJECTIONS, THIS WOULD ONLY IMPLICATE

18    INTERROGATORIES 11 AND 12.  AND WE DON'T THINK IT WOULD

19    MATTER MUCH, ONE, GIVEN THE COURT'S TENTATIVE RULINGS; BUT,

20    TWO, IT'S THE DEFENDANT'S INITIAL BURDEN AND THE PARTY

21    SEEKING TO COMPEL PRODUCTION INITIAL BURDEN TO ESTABLISH THE

22    RELEVANCY OF THEIR REQUEST.  AND HERE, WE CONTINUE TO CONTEND

23    THAT INTERROGATORIES 11 AND 12 ARE NOT RELEVANT.

24         AND ON THIS ISSUE, I JUST WANT TO PREVIEW AN

25    UPCOMING MOTION TO QUASH FOR THE COURT.  THE DEFENDANT HAS

1    SERVED A SUBPOENA ON CITIBANK RELATING TO THE PLAINTIFF'S

2    TRANSACTION HISTORY FOR SEVEN YEARS FOR ALL ACCOUNTS.  NOW,

3    WE'LL BE FILING A MOTION TO QUASH, SEEKING TO CONTROL THE WAY

4    IN WHICH THIS PROCESS IS UNDERTAKEN.

5             BUT I WAS HOPING TO GET FROM YOUR HONOR AT THE END

6    OF THIS HEARING A TENTATIVE HEARING DATE THAT WE CAN INCLUDE

7    WITH OUR MOTION, WHICH WE ARE DUE TO FILE THIS AFTERNOON.

8    BUT I JUST WANTED TO PREVIEW THAT FOR THE COURT AND THEN MOVE

9    ON TO THE REMAINING ISSUES, UNLESS THE COURT HAS ANY MORE

10   QUESTIONS ABOUT THE WAIVER ISSUE.

11            THE COURT:  NO.  WE CAN PROCEED TO THE MERITS.

12            MR. KAUFMAN:  THANK YOU, YOUR HONOR.

13            SO MOVING ON TO THE MERITS AS TO INTERROGATORIES 2

14   AND 3.  THE FIRST THING I WANTED TO ADDRESS IS THE TWO

15   ALLEGED DISCREPANCIES WITH THE TRANSACTION HISTORY.  THE

16   FIRST DISCREPANCY IS APPARENTLY ADDITIONAL PURCHASES TO THE

17   NAME KEVIN BRANCA.  WE'VE INVESTIGATED THIS.  WE ARE IN THE

18   PROCESS OF INVESTIGATING THIS.

19            IT IS OUR CURRENT UNDERSTANDING FROM THE PLAINTIFF

20   THAT HIS HUSBAND HAS MADE PURCHASES PERHAPS IN HIS NAME FROM

21   NORDSTROM.  THEY ARE GOING TO A STORAGE FACILITY THAT THEY

22   MAINTAIN OLD TAX RECORDS AT AND WILL BE LOOKING THROUGH

23   RECEIPTS THERE TO SEE IF THEY ARE ABLE TO IDENTIFY IN

24   CONNECTION WITH MR. BRANCA'S HUSBAND'S DOCUMENTS ANY RECEIPTS

25   REFLECTING HIS PURCHASES THAT MAY HAVE BEEN MADE IN THE NAME

1    OF KEVIN BRANCA EITHER ONLINE OR OTHERWISE.

2         JUST -- SO THAT'S THE FIRST ALLEGED DISCREPANCY.

3    AND THE SECOND IS THE THIRD AMENDED -- THE PRICE TAG IN THE

4    THIRD AMENDED COMPLAINT.  THE PRICE TAG IN THE THIRD AMENDED

5    COMPLAINT WAS AN EXEMPLAR.  WE DON'T ALLEGE IN THE THIRD

6    AMENDED COMPLAINT THAT THE PRICE TAG IS ASSOCIATED WITH A

7    PRODUCT PURCHASED BY MR. BRANCA.

8         WE DIDN'T INTEND TO ALLEGE THAT.  WE WERE JUST

9    TRYING TO DEMONSTRATE TO THE COURT VISUALLY WHAT THE ACCEPTED

10   COMPARE AT PRICE TAGS LOOKED LIKE.  THAT'S THE REASON THAT

11   THAT HAPPENED TO BE INCLUDED IN THE TRANSACTION HISTORY.

12        NOW, AS TO THE ISSUE OF THE FORM OF THE TRANSACTION

13   HISTORY AND NOT NECESSARILY THE SUBSTANCE, WE -- OUR FIRST

14   UNDERSTANDING CONTINUES TO BE THAT MR. BRANCA HAS MADE TWO

15   PURCHASES OR PURCHASED TWO DIFFERENT TIMES FROM NORDSTROM

16   RACK; AND WE PRODUCED THE COMPLETE RECEIPTS FOR THOSE TWO

17   PURCHASES.

18        BOTH OF THEM INCLUDE MULTIPLE PRODUCTS AND BOTH OF

19   THEM PROVIDE ALL OF THE INFORMATION THAT DEFENDANTS HAS

20   REQUESTED IN REGARDS TO EACH PURCHASE MADE BY MR. BRANCA FROM

21   NORDSTROM RACK.  SO WE BELIEVE THAT THE SUBSTANCE IS ADEQUATE

22   TO CONVEY THE INFORMATION BEING SOUGHT.

23        WITH REGARDS TO INTERROGATORIES 4 AND 16, WE HAVE NO

24   PROBLEM AMENDING TO INDICATE THAT THERE HAVE BEEN NO RETURNS

25   AND NO OTHER ADVERTISEMENTS THAT WERE SEEN BY MR. BRANCA AND

1    PROVIDING A PROFFER OR VERIFICATION THAT COMPLIES WITH

2    RULE 33.

3          MS. PEARCE:  YOUR HONOR, IF I MAY BE HEARD -- MAY I

4    RESPOND TO THE ISSUES THAT WE'VE DISCUSSED THUS FAR, OR SHALL

5    I WAIT UNTIL WE FINISH?

6          THE COURT:  WELL, MR. KAUFMAN, IF YOU WANT TO HEAR

7    HER INTERJECTION, I'LL HEAR IT FROM HER; BUT, OTHERWISE, I

8    GENERALLY PREFER FOR ONE PARTY TO FINISH SPEAKING AND

9    THEN --

10         MS. PEARCE:  CERTAINLY.

11         MR. KAUFMAN:  YEAH.  IF I CAN JUST CONTINUE, GIVEN

12   THAT I ALLOWED HER --

13         THE COURT:  CERTAINLY.

14         MR. KAUFMAN:  -- HER TO FINISH SPEAKING.

15         THE COURT:  PLEASE CONTINUE.

16         MR. KAUFMAN:  THANK YOU, YOUR HONOR.

17         SO GOING TO INTERROGATORIES 11 AND 12, IT'S OUR

18   THEORY, AND IT'S OUR POSITION BASED ON DISCOVERY TO DATE,

19   INCLUDING THE DEPOSITION OF THE NORDSTROM'S CORPORATE

20   REPRESENTATIVE, THAT NORDSTROM SELLS CERTAIN PRODUCTS THAT

21   ARE MANUFACTURED EXCLUSIVELY AND SPECIFICALLY FOR NORDSTROM

22   RACK WITH COMPARE AT PRICING.

23         IT'S OUR POSITION THAT THESE ARE DECEPTIVE AS A

24   MATTER OF FACT BECAUSE THE PRICES DO NOT REFLECT ACTUAL

25   ORIGINAL PRICES OR MSRP'S AT WHICH THE PRODUCTS WERE

1    PREVIOUSLY SOLD.

2         IN THAT REGARD, WHETHER OR NOT MR. BRANCA HAS

3    PURCHASED ANOTHER TOMMY HILFIGER SHIRT ELSEWHERE, EITHER ON

4    SALE OR OTHERWISE, ISN'T RELEVANT TO THE CONTENTION THAT BY

5    ADVERTISING A PRICE THAT WAS NEVER A PRICE ASSOCIATED WITH

6    THE PRODUCT, MR. BRANCA AND PUTATIVE CLASS MEMBERS PURCHASED

7    AT NORDSTROM HAS CAUSED A DECEPTION ON THEM.

8         THE COURT:  WELL, IT WOULD BE RELEVANT TO THE CLAIM

9    THAT MR. BRANCA IS NOT, IN FACT, DECEIVED, THOUGH; RIGHT?

10        IF THE COMPARE AT PRICE SAYS HE CAN BUY A TOMMY

11   HILFIGER SHIRT FOR $30, AND IT'S BEING OFFERED FOR $35

12   SOMEWHERE ELSE, AND HE, IN FACT, THAT SAME DAY BOUGHT IT

13   SOMEWHERE ELSE FOR $30, HE WOULDN'T HAVE BEEN DECEIVED BY

14   THAT AD; RIGHT?

15        MR. KAUFMAN:  YOUR HONOR, THAT WOULD ONLY BE

16   RELEVANT TO THE EXTENT THAT MR. BRANCA PURCHASED THE

17   IDENTICAL PRODUCT THAT HE PURCHASED AT NORDSTROM RACK.

18        OUR POSITION IS THAT THE IDENTICAL PRODUCTS BEING

19   SOLD AT NORDSTROM RACK WITH "COMPARE AT" THAT WOULD FALL

20   WITHIN THIS DEFINITION WERE NOT SOLD ELSEWHERE, WERE NOT

21   BEING SOLD ELSEWHERE AT THAT PRICE AT THE TIME THAT HE MADE

22   HIS PURCHASES FROM NORDSTROM RACK.

23        SO UNLESS IT WAS THE IDENTICAL PRODUCT, NO, IT WOULD

24   NOT SATISFY THE INQUIRY.

25        THE COURT:  WELL -- AND JUST TO MAKE SURE THAT WE'RE

1    TALKING THE SAME LANGUAGE HERE.  LET ME GRANT FOR THE MOMENT

2    THAT IT WAS NOT BEING OFFERED AT THE PRICE, BUT THE QUESTION

3    ISN'T WHAT PRICE IT WAS BEING OFFERED AT.

4         THE QUESTION IS WHETHER HE, IN FACT, BOUGHT THE

5    IDENTICAL ITEM FROM THE STORE THAT WAS BEING COMPARED AT;

6    RIGHT?  THAT WAS --

7         (OVERLAPPING DIALOGUE.)

8    THE COURT:  THE QUESTION IS WHETHER HE PURCHASED THE

9    IDENTICAL ITEM FROM OTHER STORES AND WOULD HAVE BEEN AWARE OF

10   WHAT THEIR ACTUAL PRICING HISTORY IS.  ISN'T THAT -- ISN'T

11   THAT --

12   MR. KAUFMAN:  I WOULD AGREE THAT IF THE INQUIRY

13   WERE, IDENTIFY ALL PRODUCTS IDENTICAL TO THE PRODUCTS YOU

14   PURCHASED FROM NORDSTROM RACK THAT YOU PURCHASED ELSEWHERE

15   AND PROVIDE DETAILED, YOU KNOW, TO THE EXTENT AVAILABLE ON

16   THOSE, I DO AGREE THAT THAT WOULD BE RELEVANT AND WE WOULD

17   HAVE RESPONDED TO THAT.  BUT THAT'S NOT WHAT IS BEING ASKED

18   FOR HERE, YOUR HONOR.

19        THEY ARE ASKING FOR MUCH MORE.  IN FACT, WHAT THEY

20   ARE ASKING THE PLAINTIFFS TO DO, AND REALLY THE ONLY LOGICAL

21   WAY TO ACCOMPLISH IT IS TO OPEN HIS CLOSET AND HIS DRAWERS

22   AND GO ONE BY ONE THROUGH HIS ITEMS AND SAY, THIS IS A PAIR

23   OF TOMMY HILFIGER SHORTS, I SUPPOSE PHOTOGRAPH THEM OR MAKE

24   THEM AVAILABLE FOR INSPECTION, AND TRY TO REMEMBER WHERE HE

25   PURCHASED THEM, WHEN HE PURCHASED THEM, HOW MUCH HE PAID,

1    WHAT REPRESENTATIONS, YOU KNOW, PRICE OR DISCOUNT MIGHT HAVE

2    BEEN MADE TO HIM AT THE TIME HE MADE THE PURCHASE AND

3    OTHERWISE.

4              AND THAT'S JUST UNLIKELY TO YIELD ANYTHING USEFUL

5    FOR ANY PARTY.

6              THE COURT:  CAN HE REQUEST THAT INFORMATION FROM THE

7    COMPETITOR STORES ON HIS PURCHASE HISTORY, IF HE'S USING A

8    PARTICULAR ACCOUNT, FOR EXAMPLE, OR EVEN A PARTICULAR CREDIT

9    CARD?

10             IT MIGHT BE A WAY OF --

11             MR. KAUFMAN:  BASED ON NORDSTROM'S SEEMING INABILITY

12   TO BACK END THEIR WAY INTO FIGURING OUT WHAT TRANSACTIONS HE

13   PURCHASED, I WOULD DOUBT THAT THE COMPETITORS WOULD HAVE

14   SOMETHING THAT NORDSTROM DIDN'T.

15             BUT I DON'T -- BUT I DO NOT KNOW THAT WITH ANY

16   DEGREE OF CERTAINTY, YOUR HONOR.  I WOULD BE MERELY

17   SPECULATING BY SAYING THAT.  BUT BASED ON THE EXPERIENCE

18   DEALING WITH NORDSTROM, I WOULD SAY IT'S UNLIKELY.

19             THE COURT:  OKAY.  THANK YOU.

20             MR. KAUFMAN:  SO MOVING ON TO INTERROGATORIES 5

21   THROUGH 7 AND 9 AND 10.  WE AGREE FULLY WITH THE COURT THAT

22   THESE ARE REQUESTING EXPERT TESTIMONY.

23             THE PLAINTIFF ULTIMATELY KNOWS WHAT HE KNOWS AND

24   ISN'T IN A POSITION TO TESTIFY OR TO VERIFY UNDER OATH WHAT

25   HIS EXPERT WILL ULTIMATELY OPINE.  WHILE THE PLAINTIFF IS

22

1   AWARE THAT THERE WILL BE -- THE PLAINTIFF IS FULLY AWARE THAT

2   THERE WILL BE EXPERTS ENGAGED TO ADDRESS THESE ISSUES.

3           ADDITIONALLY, WE THINK THAT THE RESPONSES TO THE

4   INTERROGATORIES ARE OTHERWISE SUFFICIENT BECAUSE THEY ARE

5   CONSISTENT WITH THE ALLEGATIONS ALLEGED IN THE THIRD AMENDED

6   COMPLAINT, WHICH THE COURT FOUND SUFFICIENT TO SATISFY RULE

7   (B)9 -- RULE 9(B)-TYPE PLEADING STANDARD.

8           SO AS A MATTER OF FIRST INSTANCE, THE COURT HAS

9   ALREADY FOUND THAT THESE ARE SUFFICIENT TO SET FORTH THE

10  TYPES OF CLAIMS WHICH DIRECT THE LEVEL OF SPECIFICITY TO

11  ADVISE NORDSTROM OF WHAT THEY ARE TO DEFEND AGAINST AND WHAT

12  THE ALLEGATIONS ARE.  AND THAT'S PRECISELY THE SITUATION

13  HERE.

14          BUT EVEN IF THEY WEREN'T, IT WOULD STILL BE AN

15  INAPPROPRIATE BASIS FOR OBTAINING EXPERT TESTIMONY.  AND I

16  SUPPOSE WE CAN ADDRESS THAT NOW WITH REGARDS TO THE MARONICK

17  ITEM, REQUEST FOR PRODUCTION 22.

18          OBVIOUSLY WE HAVE NO PROBLEM SUPPLEMENTING OUR

19  RESPONSE TO REQUESTS 10, 11, 13, 14, 19, 20, 21 AND 23 TO

20  INDICATE THAT NOTHING HAS BEEN WITHHELD FROM THOSE REQUESTS.

21          YOUR HONOR MENTIONED APPROPRIATELY VERIFYING THE

22  RESPONSE TO THE REQUEST FOR PRODUCTION, AND I JUST WANT TO

23  UNDERSTAND CONCEPTUALLY WHETHER WE'RE BEING ASKED TO PROVIDE

24  VERIFICATION IN A SIMILAR FORMAT AS INTERROGATORIES TO THOSE

25  REQUESTS FOR PRODUCTION OR SOMETHING DIFFERENT, AND WHETHER

1 THE REPRESENTATION OF COUNSEL WILL BE SUFFICIENT, AS THEY

2 TYPICALLY ARE?

3   THE COURT:  AS TO THE REQUEST FOR PRODUCTION?

4   MR. KAUFMAN:  YEAH.  YOUR HONOR MAY HAVE

5 INADVERTENTLY MENTIONED "APPROPRIATELY VERIFIED RESPONSE"

6 WHEN ASKED THAT PLAINTIFF SUPPLEMENT TO INDICATE THAT THERE

7 IS NOTHING FURTHER TO PRODUCE TO THE VARIOUS REQUESTS OTHER

8 THAN REQUESTS 1 AND 2.

9   THE COURT:  NO -- YEAH, I MEAN I THINK -- I MAY HAVE

10 SAID APPROPRIATELY VERIFY, BUT IT WOULD BE THE STANDARD FOR

11 REQUEST FOR PRODUCTION ON THAT.

12   MR. KAUFMAN:  OKAY.  UNDERSTOOD, YOUR HONOR.  SO

13 THANK YOU FOR THE CLARIFICATION.

14   MOVING ON TO REQUEST FOR PRODUCTION NO. 22.  SO

15 THERE IS A DISCONNECT BETWEEN NORDSTROM -- WHAT NORDSTROM

16 ACTUALLY SEEKS AND WHAT NORDSTROM IS ENTITLED TO.

17   EVEN IF THE COURT WERE TO FIND THAT THERE IS A

18 WAIVER BY PUTTING THE MARONICK SURVEY AT ISSUE IN THE THIRD

19 AMENDED COMPLAINT AND LATER PRODUCING THE MARONICK SURVEY,

20 WHAT I DON'T THINK CAN BE DISPUTED IS THAT THEY ARE -- THAT

21 NORDSTROM IS ENTITLED TO NO MORE THAN THEY WOULD BE ENTITLED

22 TO IF MR. MARONICK WERE A TESTIFYING EXPERT AT THIS STAGE.

23   THERE HAS BEEN NO WAIVER OF PRIVILEGE THAT WOULD BE

24 ASSOCIATED WITH A TESTIFYING EXPERT.  THERE WOULD BE NO

25 OBLIGATION TO PRODUCE COMMUNICATIONS BETWEEN COUNSEL AND THE

1    EXPERT.  THERE WOULD BE NO OBLIGATION TO PRODUCE DRAFTS OF

2    REPORTS OR DRAFTS OF SURVEYS UNDERLYING THE REPORTS THAT WERE

3    MADE EXCLUSIVELY FOR THE BASIS OF PRODUCING THE REPORT.

4           THESE ARE THE THINGS THAT CONTINUE TO BE PROTECTED,

5    EVEN IF THE COURT FINDS WAIVER WITH RESPECT TO THE MARONICK

6    ITEMS AND REQUIRES A MORE FULSOME PRODUCTION IN RESPONSE TO

7    NO. 22.

8           HOWEVER, WE BELIEVE THAT THIS CASE IS CONSISTENT

9    WITH THE PLYDER (PHONETIC) CASE THAT WE CITE IN THE PAPERS,

10   THE DISTRICT OF NEW JERSEY CASE, IN WHICH THE PLAINTIFF PUT

11   AN EXPERT'S OPINION AT ISSUE VERY EARLY ON IN THE CASE.  AND

12   THE COURT DIDN'T HAVE THE NEED TO ADOPT IT.  ULTIMATELY,

13   BEFORE THE COURT EVER RULED ON THE SUFFICIENCY OR OTHERWISE

14   RELIED ON IT IN A MATERIAL WAY, THE PLAINTIFF WITHDREW THE

15   EXPERT AND THE DEFENDANT SOUGHT TO COMPEL PRODUCTION.

16          THE COURT FOUND THAT BECAUSE THERE WAS NO RELIANCE

17   ON THAT BIT OF EXPERT OPINION THAT WAS ALLEGEDLY PUT AT

18   ISSUE, THERE WAS NO BASIS FOR COMPELLING FURTHER PRODUCTION.

19   WE THINK THAT'S PRECISELY THE ISSUE HERE.

20          WITH RESPECT TO WHAT THE REASONABLE CONSUMERS

21   BELIEVED, THE COURT FOUND THAT IT WAS SUFFICIENT FOR

22   MR. BRANCA TO ALLEGE HIS PERSONAL EXPERIENCES AND TO PROVIDE

23   HIS OWN ANECDOTAL EVIDENCE TO SUPPORT THE NOTION THAT OTHER

24   REASONABLE CONSUMERS LIKE MR. BRANCA WERE SIMILARLY DECEIVED.

25   AND THAT'S PRECISELY THE CIRCUMSTANCE HERE.

25

1          EVEN THE WORLEY (PHONETIC) CASE THAT NORDSTROM

2     CITES, WHICH IS THE NORTHERN DISTRICT OF CALIFORNIA CASE,

3     SUPPORTS THE CONCLUSION THAT THE PROTECTIONS OF RULE 26(B)(4)

4     CONTINUE TO APPLY EVEN IF THERE IS A WAIVER WITH RESPECT TO A

5     CONSULTING EXPERT.

6          WITH THAT, I DON'T BELIEVE I HAVE ANYTHING FURTHER

7     TO ADDRESS WITH RESPECT TO THE -- UNLESS THERE IS ITEMS

8     RAISED BY MS. PEARCE'S FURTHER ARGUMENT TO THE COURT OR THE

9     COURT HAS ANY FURTHER QUESTIONS.

10          THE COURT:  THANK YOU, MR. KAUFMAN.

11          MR. KAUFMAN:  THANK YOU.

12          THE COURT:  MS. PEARCE.

13          MS. PEARCE:  THANK YOU, YOUR HONOR.

14          THE COURT:  I'M AFRAID YOU'RE TAKING GOOD NOTES.

15          MS. PEARCE:  AS TO OUR FIRST ISSUE ABOUT THE

16    TIMELINESS OF THE RESPONSES.  DEFENDANT'S POSITION WOULD BE

17    THAT THERE WAS NOT GOOD CAUSE BECAUSE THE MEET AND CONFER

18    THAT WAS ONGOING AT THAT TIME, AT THE TIME THAT THESE

19    RESPONSES WERE DUE WAS ABOUT DEFENDANT'S OWN DATA

20    CAPABILITIES, AND WE FEEL THE PLAINTIFF HAS NOT EXPLAINED HOW

21    THOSE DISCUSSIONS AFFECTED HIS ABILITY TO RESPOND TO THE

22    QUESTIONS WHICH WERE PROPOSED BY DEFENDANT'S DISCOVERY

23    REQUESTS.

24          AS TO INTERROGATORIES 2 TO 3, WE DO TAKE ISSUE WITH

25    THE ASSERTION THAT THE PRICE TAG IN THE COMPLAINT WAS JUST AN

1    EXEMPLAR, BECAUSE THE TRANSACTIONAL HISTORY THAT WE HAVE BEEN

2    ABLE TO ASSEMBLE TO THIS POINT DOES INDICATE THAT THAT PRICE

3    TAG ALIGNS WITH A PURCHASE WHICH WAS MADE BY MR. BRANCA.

4            AND OBVIOUSLY THIS WILL ALL BE SUBJECT TO FURTHER

5    TEASING OUT, BUT WE BELIEVE THAT THERE IS -- THERE IS GOOD

6    REASON TO BELIEVE THAT THERE WERE -- THAT THE RECORDS WHICH

7    HAVE BEEN PRODUCED TO DATE ARE NOT A FULL AND COMPLETE RECORD

8    OF THE PURCHASES WHICH IS REQUESTED BY THESE INTERROGATORIES.

9            AS TO INTERROGATORIES 11 AND 12 ABOUT PRODUCTS OF

10   THE SAME BRANDS PURCHASED FROM OTHER RETAILERS.  I KNOW THAT

11   MR. KAUFMAN'S VIEW IS THAT THIS CASE CONCERNS PRODUCTS WHICH

12   WERE NOT SOLD ELSEWHERE, BUT THAT FACT HAS NOT BEEN

13   ESTABLISHED AS TO THE PRODUCTS WHICH ARE IN THE COMPLAINT.

14           AND, YOU KNOW, ASIDE FROM WHETHER IT'S THE -- HIS

15   VIEW IS THAT ONLY A PURCHASE OF THE IDENTICAL PRODUCT

16   ELSEWHERE WOULD BE RELEVANT, OUR VIEW IS WE BELIEVE THAT

17   RELEVANCE IS FOR ONE THING A FAIRLY LOW BAR, BUT ALSO THAT IF

18   WE SAY THAT -- YOU KNOW, CONSIDER HYPOTHETICALLY WHERE ONE OF

19   THE PURCHASES AT ISSUE IS A PAIR OF TOMMY HILFIGER PANTS.

20           IF IT TURNED OUT THAT PLAINTIFF IS AN AVID SHOPPER,

21   A TOMMY HILFIGER CONNOISSEUR, WHO OWNS 15 PAIRS OF HILFIGER

22   PANTS, MAYBE SOME ARE IDENTICAL OR VIRTUALLY IDENTICAL TO THE

23   ONES HE PURCHASED AT RACK, HIS BUYING BEHAVIOR, WHATEVER THAT

24   TURNS OUT TO BE, COULD BE RELEVANT TO A NUMBER OF -- COULD

25   WEIGH IN A NUMBER OF WAYS ABOUT HIS RELIANCE AND ALSO WHETHER

1    THE PRICES WERE DECEPTIVE, WHETHER HE WAS, IN FACT, DECEIVED.

2         FOR EXAMPLE, IF IT SHOWED THAT THE PRICES HE PAID

3    REGULARLY WERE THE SAME OR VERY CLOSE TO THE COMPARE AT

4    PRICE, THAT WOULD CERTAINLY TEND TO SUGGEST THAT THE COMPARE

5    AT PRICE WAS NOT DECEPTIVE.

6         IF HE HAD NEVER PAID ANYTHING CLOSE TO THE COMPARE

7    AT PRICE FOR A PAIR OF TOMMY HILFIGER PANTS, THAT WOULD ALSO

8    TEND TO SHOW THAT HE WAS AN INFORMED CONSUMER WHO WOULD BE

9    UNLIKELY TO BE DECEIVED BY A COMPARE AT PRICE WHICH DID NOT

10   ALIGN WITH HIS PAST EXPERIENCE.

11        OR IF IT JUST HAPPENED TO BE A LOW PRICE COMPARED TO

12   WHAT HE USUALLY PAID, IT WOULD SUGGEST THAT HE BOUGHT THEM

13   BECAUSE THEY WERE A GOOD DEAL AND HE KNEW INDEPENDENTLY THAT

14   THEY WERE A GOOD DEAL, AND HE DIDN'T RELY ON THE COMPARE AT

15   PRICE.

16        SO WE THINK THAT HIS EXPERIENCE AS A CONSUMER WITH

17   THESE BRANDS AND WHAT THESE BRANDS SELL FOR GENERALLY, WHAT

18   SIMILAR PRODUCTS SELL FOR GENERALLY, WOULD INFORM HIS STATE

19   OF MIND AND THE ISSUES OF RELIANCE AND DECEPTION.

20        YOU KNOW, WE BELIEVE, AS I BELIEVE HAS BEEN

21   MENTIONED HERE, YOU KNOW, THIS IS NOT PURE SPECULATION

22   BECAUSE WE KNOW THAT THIS PLAINTIFF HAS BROUGHT ANOTHER

23   CONSUMER CLASS ACTION FOR A SIMILAR -- YOU KNOW, WITH SIMILAR

24   ALLEGATIONS AGAINST ANOTHER STORE.  SO THE FACT THAT HE'S AN

25   AVID OR A SAVVY SHOPPER IS NOT OUTSIDE THE REALM OF

1   POSSIBILITY FOR SURE.

2            AS TO INTERROGATORIES 5 TO 7, I BELIEVE THAT WE

3   HAVE -- WE HAVE MOSTLY DISCUSSED THEM, BUT I -- I DO THINK

4   THAT THE RESPONSES THAT WERE GIVEN ARE LEGAL CONCLUSIONS

5   ABOUT PRICES BEING DECEPTIVE AND ABOUT WHAT PLAINTIFF WOULD

6   HAVE DONE OTHERWISE.

7            BUT RULE 11 REQUIRES THERE TO BE SOME KIND OF

8   FACTUAL OR EVIDENTIARY BASIS FOR THESE CONCLUSIONS.  AND WE

9   BELIEVE THAT THAT'S WHAT INTERROGATORIES 5 TO 7 ARE SEEKING

10  TO GET AT, IS SOME KIND OF TANGIBLE, CONCRETE EXPLANATION FOR

11  WHY HE BELIEVES THAT THESE PRICES THAT HE PAID WERE DECEPTIVE

12  OR INCORRECT.

13           AND WHETHER THOSE ALLEGATIONS WERE SUFFICIENT TO

14  MEET THE STANDARDS OF 9(B), WE THINK THAT THE PLEADING

15  STANDARD IS VERY DIFFERENT FROM THE STANDARD IN RESPONDING TO

16  INTERROGATORIES.

17           I BELIEVE WE'VE ALREADY DISCUSSED OUR ARGUMENTS

18  ABOUT INTERROGATORIES 9 AND 10, ABOUT IF THERE ARE FACTS AND

19  EVIDENCE UNDERLYING MARONICK'S OPINION, WHICH IS THE SOURCE

20  OF THAT CONTENTION IN THE COMPLAINT, THAT IT SHOULD BE

21  DISCLOSED.

22           YOU KNOW, AS TO RFP NO. 22, YOU KNOW, IT'S CLEAR

23  THAT THE COURT DID RELY ON THE FIVE PAGES OF THESE SURVEY --

24  THE SURVEY SUMMARY AND RESULTS WHICH WERE INCLUDED IN THE

25  COMPLAINT.

1      THE ORIGINAL COMPLAINT, AS WE NOTED IN FOOTNOTE 3 OF

2   OUR REPLY, PLAINTIFF RELIED UPON THE SURVEY TO SURVIVE A

3   MOTION TO DISMISS OF THE AMENDED COMPLAINT, BECAUSE THE

4   ORIGINAL COMPLAINT WAS DISMISSED ON THE BASIS THAT HIS

5   ALLEGATIONS HAD NOT ESTABLISHED THAT THE PRICE TAGS WERE

6   LIKELY TO DECEIVE REASONABLE CONSUMERS, AND SURVIVED THE

7   LATER MOTION TO DISMISS WITH THE COURT RELYING IN PART UPON

8   SURVEY RESULTS WHICH PURPORTED TO DEMONSTRATE THAT 90 PERCENT

9   OF 206 PARTICIPANTS REPORTED INTERPRETING NORDSTROM RACK TAGS

10   IN A CERTAIN WAY.

11      WE BELIEVE THAT THIS HAS DEFINITELY BEEN PLACED --

12   AS THESE CASES THAT WE HAVE CITED HERE, WORLEY, THAT IT HAS

13   BEEN, QUOTE -- YOU KNOW, THESE OPINIONS HAVE BEEN BROUGHT

14   INTO THE JUDICIAL ARENA TO THE EXTENT THAT WE OUGHT TO BE

15   ABLE TO SEE THE UNDERLYING DATA, THE PATTERNS OF -- YOU KNOW,

16   IF SOMEONE RESPONDED TO ONE QUESTION ONE WAY, HOW DID THAT

17   INDIVIDUAL RESPONDENT RESPOND TO THE NEXT?  WHO WERE THESE

18   PEOPLE AND HOW WERE THEY FOUND?

19      AND WE BELIEVE THAT IT'S UNFAIR TO TRY TO SORT OF

20   SELECTIVELY WAIVE THE PRIVILEGE FOR ADVANTAGEOUS INFORMATION

21   AND NOT DISCLOSE THE UNDERLYING INFORMATION.

22      WE BELIEVE IT'S RELEVANT INDEPENDENTLY AS TO THE

23   ISSUE OF WHETHER REASONABLE CONSUMERS ARE DECEIVED BY

24   NORDSTROM RACK'S PRICES.  IF THIS PRIVILEGE HAS BEEN WAIVED,

25   THIS CLOSER INSPECTION OF THE ACTUAL METHODOLOGY COULD VERY

1    WELL UNDERMINE THE CONCLUSIONS WHICH WERE REACHED AND WHICH

2    WERE RELIED UPON IN THE COMPLAINT, AS WELL AS POTENTIALLY

3    PROVIDING EVIDENCE SUPPORTING THE OPPOSITE CONCLUSION.

4          AND WE KNOW THAT PLAINTIFF'S COUNSEL KNOWS WHAT

5    WE'RE SEEKING HERE BECAUSE IN OTHER CASES IN WHICH THE SAME

6    COUNSEL HAS BEEN INVOLVED ON BOTH SIDES, THEY HAVE SOUGHT THE

7    SAME INFORMATION FROM DEFENSE'S EXPERTS AND HAVE RECEIVED IT

8    AND HAVE USED IT TO ARGUE THAT IT SUPPORTED THEIR POSITION.

9          NOW, OBVIOUSLY NOT ALL, YOU KNOW, COMMUNICATIONS ARE

10    DISCOVERABLE, BUT EVEN AS TO TESTIFYING EXPERTS,

11    COMMUNICATIONS WHICH REVEAL THE UNDERLYING ASSUMPTIONS WHICH

12    WERE COMMUNICATED TO THE EXPERT OR THE FACTS THAT HAVE BEEN

13    COMMUNICATED TO THE EXPERT, THOSE ARE EXCEPTIONS FROM THAT

14    PRIVILEGE WHICH WE THINK WOULD APPLY IN THIS SITUATION AS

15    WELL.

16          THE COURT:  THANK YOU, MS. PEARCE.

17          MS. PEARCE:  THANK YOU, YOUR HONOR.

18          THE COURT:  ANYTHING FURTHER FROM YOU,

19    MR. KAUFMAN?

20          MR. KAUFMAN:  I THINK I'VE SET FORTH OUR POSITION

21    PRETTY -- PRETTY COMPREHENSIBLY, UNLESS THE COURT HAS ANY

22    QUESTIONS BASED ON THE ADDITIONS BY MS. PEARCE.

23          BUT I WILL NOTE THAT WITH RESPECT TO THE ISSUE OF

24    RELIANCE ON THE MARONICK SURVEY, THE COURT INDEPENDENTLY

25    FOUND THAT ANECDOTAL EVIDENCE IS SUFFICIENT TO ESTABLISH THAT

 1     OTHER REASONABLE CONSUMERS MAY HAVE BEEN DECEIVED, AND THAT

 2     WAS ALSO INCLUDED IN THE COMPLAINT.

 3          THERE WERE MULTIPLE INDEPENDENT BASES FOR THE COURT

 4     CONCLUDING THAT MR. BRANCA SUFFICIENTLY PLED DECEPTION IN THE

 5     SECOND AMENDED AND THE THIRD AMENDED COMPLAINT, AND IT WAS

 6     NOT LIMITED TO AND NOT NECESSARY THAT THE -- THAT THE SURVEY

 7     RESULTS HAD BEEN INCLUDED, BUT NOTWITHSTANDING NORDSTROM'S

 8     OWN INTERNAL RECORDS AND OWN INTERNAL PROCEDURES HAVE

 9     ESTABLISHED THAT THEY INTENDED FOR CONSUMERS TO UNDERSTAND

10     PRECISELY WHAT THE SURVEY RESULTS WERE.

11          SO TO THE EXTENT THEY WANT TO TAKE ISSUE WITH THOSE

12     RESULTS, ALL THEY ARE TAKING ISSUE WITH IS PRECISELY WHAT

13     THEY WANTED PEOPLE TO UNDERSTAND.

14          THE COURT:  THANK YOU, MR. KAUFMAN.

15          MS. PEARCE:  I HAVE ONE FURTHER ISSUE, YOUR HONOR; I

16     APOLOGIZE.  AND THAT IS THE MATTER OF FEES, WHICH IS THAT

17     DEFENDANT WOULD SEEK FEES IN ASSOCIATION WITH THIS MOTION,

18     PARTICULARLY BECAUSE SOME OF THESE ISSUES ABOUT VERIFICATION

19     AND, YOU KNOW, GETTING RESPONSES WHICH HAVE EVIDENTIARY

20     VALUE, WE THINK SHOULD NOT HAVE REQUIRED A MOTION TO

21     RESOLVE.

22          THE COURT:  WELL, I'M GOING TO --

23          (OVERLAPPING DIALOGUE.)

24          THE COURT:  GO AHEAD, MR. KAUFMAN.  I DIDN'T MEAN TO

25     CUT YOU OFF.

1          MR. KAUFMAN:  I WAS JUST GOING TO SAY, WE OBVIOUSLY

2    DISAGREE WITH THAT NOTION.  WE BELIEVE THERE WAS A GOOD-FAITH

3    BASIS FOR ANY DISPUTES THAT HAVE SURVIVED UNTIL THIS POINT

4    WITH THE EXCEPTION OF, YOU KNOW, THE ONES THAT WE'RE STILL IN

5    THE PROCESSING OF RESOLVING.

6          AND WE BELIEVE AN ADDITIONAL OR MORE COMPLETE MEET

7    AND CONFER WOULD HAVE RESOLVED, ABSENT THE NEED FOR A MOTION

8    SO THE PREMATURE FILING OF THE MOTION HAS RESULTED IN FEES

9    THAT WERE OTHERWISE UNNECESSARY AND ADVERSE AND NOT

10   NECESSARILY PLAINTIFF'S ACTS.

11         THE COURT:  I'M GOING TO TAKE A RECESS AND LOOK OVER

12   THESE MATTERS ONE LAST TIME.  AND I'LL BE OUT AND ISSUE MY

13   RULING.

14         THANK YOU.

15         (RECESS, 2:46 P.M. TO 3:00 P.M.)

16         THE COURT:  ALL RIGHT.  THIS IS MY THINKING ON THIS

17   CASE AFTER MUCH CONSIDERATION.

18         I BELIEVE THAT MS. PEARCE HAS ADEQUATELY

19   DEMONSTRATED THAT NORDSTROM DID CONDUCT A VERBAL MEET AND

20   CONFER.  I THINK THAT, ADDED TO THE EXTENSIVE WRITTEN

21   CORRESPONDENCE, SATISFIES THE REQUIREMENTS OF THE LOCAL RULES

22   IN TERMS OF DOING A MEET AND CONFER BEFORE SEEKING THE

23   COURT'S INTERVENTION WITH A MOTION.

24         WITH REGARD TO OTHER PROCEDURAL ISSUES THAT WE

25   DISCUSSED, I FIND THAT THE PLAINTIFFS HAVE NOT SHOWN GOOD

1  CAUSE FOR ALL THESE PROCEDURAL DEFECTS; IN PARTICULAR, THE

2  FAILURE TO VERIFY APPROPRIATELY.  I JUST DON'T FIND THAT

3  THERE IS A GOOD CAUSE FOR THAT.  BUT I DO AGREE WITH

4  MR. KAUFMAN, THAT THAT WOULD NOT WAIVE ANY PRIVILEGES THAT

5  THE PLAINTIFFS WOULD HAVE.

6        BASED ON THE PROCEDURAL ISSUE, I WOULD GRANT THE

7  MOTION TO COMPEL WITH REGARD TO ALL OF THE REQUESTED

8  INTERROGATORIES AND REQUESTS FOR PRODUCTION, WITH THE

9  EXCEPTION OF REQUEST FOR PRODUCTION 22.

10       AND AS TO REQUEST FOR PRODUCTION 22, WHICH IS THE

11  MARONICK SURVEY, LET ME PUT FORTH ON THE RECORD THE WAY I

12  ANALYZE THAT ISSUE.

13       IT APPEARS THAT DR. MARONICK IS NOT GOING TO BE

14  TESTIFYING AT TRIAL AND APPARENTLY WAS ORIGINALLY RETAINED AS

15  A CONSULTING EXPERT AND THEREFORE WOULD NORMALLY BE PROTECTED

16  UNDER FEDERAL RULE OF CIVIL PROCEDURE 26(B)(4)(D).

17       BUT ONCE THAT EXPERT IS PUT INTO THE RECORD, THE

18  CASE LAW STATES THAT THE EXPERT LOSES THAT CONSULTING EXPERT

19  PROTECTION AND BECOMES ESSENTIALLY A TRIAL PREPARATION

20  WITNESS.

21       THIS RULE MAKES SOME PUBLIC POLICY SENSE BECAUSE

22  OTHERWISE IT MIGHT INCENTIVIZE PARTIES TO RELY ON EXPERTS IN

23  THE RECORD FOR PURPOSES OF AVOIDING MOTIONS TO DISMISS OR

24  MOTIONS FOR SUMMARY JUDGMENT THAT THEY KNEW THERE WERE

25  PROBLEMS WITH, AND THEN THEY COULD SIMPLY REMOVE THEM, SAY

1   THEY WEREN'T PLANNING ON RELYING ON THEM AS TRIAL WITNESSES,

2   AND THEREFORE AVOID TURNING OVER UNDERLYING DATA OR

3   INFORMATION THAT MIGHT UNDERCUT THEIR FINDINGS.

4          SO I FIND IN THIS CASE THAT DR. MARONICK HAS LOST

5   HIS ROLE AS A CONSULTING EXPERT; BUT THAT DOES NOT END THE

6   INQUIRY.  EVEN IF HE'S CONSIDERED TO BE A TRIAL

7   PREPARATION -- OR TRIAL WITNESS, THE DRAFT -- ANY DRAFT

8   EXPERT REPORTS THAT HE WROTE WOULD BE PROTECTED UNDER FEDERAL

9   RULE OF CIVIL PROCEDURE 26(B)(4)(B).

10          SO I WOULD -- AND COMMUNICATIONS WOULD GENERALLY BE

11  PROTECTED UNDER FEDERAL RULE OF CIVIL PROCEDURE 26(B)(4)(C),

12  WITH THE EXCEPTION OF THREE AREAS OF COMMUNICATIONS THAT ARE

13  EXCEPTED BY THAT RULE.

14          SO AS TO REQUEST FOR PRODUCTION 22, I WILL ORDER

15  THAT ALL OF THE CATEGORIES IDENTIFIED IN THAT REQUEST FOR

16  PRODUCTION BE TURNED OVER.  THE ONE EXCEPTION WOULD BE AT THE

17  END, THERE IS A REQUEST FOR ALL COMMUNICATIONS WITH

18  DR. MARONICK.  AND I WOULD ORDER THAT THOSE ARE PROTECTED

19  FROM DISCLOSURE, WITH THE EXCEPTION OF COMMUNICATIONS UNDER

20  FEDERAL RULE OF CIVIL PROCEDURE 26(B)(4)(C) AS TO THOSE THREE

21  CATEGORIES.

22          AND THOSE WOULD BE ANY COMMUNICATIONS, NO. 1,

23  RELATING TO COMPENSATION FOR THE EXPERT STUDY OR TESTIMONY;

24  NO. 2, COMMUNICATIONS IDENTIFYING FACTS OR DATA THAT THE

25  PARTY'S ATTORNEY PROVIDED AND THAT THE EXPERT CONSIDERED IN

1    FORMING THE OPINIONS TO BE EXPRESSED; AND, 3, COMMUNICATIONS

2    THAT IDENTIFY ASSUMPTIONS THAT THE PARTY'S ATTORNEY PROVIDED

3    AND THAT THE EXPERT RELIED ON IN FORMING THE OPINIONS TO BE

4    EXPRESSED.  BUT OTHERWISE COMMUNICATIONS WOULD BE PROTECTED.

5         AND AS I STATED EARLIER, ANY DRAFT EXPERT REPORTS

6    WOULD BE PROTECTED AS WELL FROM DISCLOSURE.  OTHERWISE, I

7    WOULD GRANT THE MOTION TO COMPEL WITH RESPECT TO REQUEST FOR

8    PRODUCTION NO. 22.

9         FINALLY, TURNING TO THE ISSUE OF SANCTIONS.  I AM

10   TRYING TO GIVE EVERY, YOU KNOW, BENEFIT OF THE DOUBT HERE TO

11   PLAINTIFF, BUT I HAVE A HARD TIME GETTING PAST THE FACT THAT

12   AT LEAST AS TO THE VERIFICATION WHICH WAS MENTIONED IN

13   CORRESPONDENCE, BOTH OF THE ISSUES, BOTH OF THE DEFICIENCIES

14   WERE MENTIONED IN THE CORRESPONDENCE, AND TO THIS DATE, IT'S

15   STILL INSUFFICIENT AS OF TODAY'S DATE.  I HAVE A HARD TIME

16   FINDING THAT THE MOTION WAS NOT -- OR THAT THE OPPOSITION WAS

17   SUBSTANTIALLY JUSTIFIED.

18        SO I WOULD FIND THAT SOME SANCTION OR FEES WOULD BE

19   APPROPRIATE IN THIS CASE.  I WILL DISCOUNT IT, HOWEVER, BY --

20   FOR THE REASONS SET FORTH BY MR. KAUFMAN, WHICH I FIND DON'T

21   AMOUNT TO A LEGAL -- LEGAL GOOD CAUSE, BUT DO, I THINK,

22   MITIGATE THE THE PLAINTIFF'S ACTIONS HERE.

23        WHAT I WILL REQUEST, MS. PEARCE, IS THAT NORDSTROM

24   PROVIDE ME A STATEMENT OF THEIR FEES IN CONNECTION WITH

25   BRINGING THIS MOTION.

36

```
 1          AND HOW MUCH TIME DO YOU THINK YOU'LL NEED TO
 2   PROVIDE THE COURT WITH THAT ACCOUNTING?
 3          MS. PEARCE:  IS ONE WEEK PERMISSIBLE?
 4          THE COURT:  ONE WEEK WOULD BE FINE.  WE'LL GIVE YOU
 5   UNTIL CLOSE OF BUSINESS -- UNTIL JUNE 21ST TO FILE THAT WITH
 6   THE COURT.
 7          AND AFTER RECEIVING THAT, I'LL MAKE A FINAL
 8   DETERMINATION ABOUT WHAT FEES WOULD BE APPROPRIATE IN LIGHT
 9   OF MR. KAUFMAN'S ARGUMENTS.
10          ANYTHING FURTHER FROM THE PARTIES?
11          MR. KAUFMAN:  YES, YOUR HONOR.
12          I PREVIEWED PREVIOUSLY THE ISSUE OF THE MOTION TO
13   QUASH THE SUBPOENA ON CITIBANK.  I WAS HOPING TO SECURE A
14   HEARING DATE ON THAT SO THAT WE COULD GO AHEAD AND FILE OUR
15   MOTION AND PROVIDE THAT IN THE NOTICE OF MOTION TO THE EXTENT
16   REQUIRED; OR IF YOUR HONOR PREFERS A DIFFERENT PROCEDURE,
17   LIKE A LETTER PROCEDURE AS WE'VE UNDERTAKEN WITH THIS MOTION
18   TO COMPEL.  WE'RE HAPPY TO APPROACH IT IN THAT FASHION AS
19   WELL.
20          THE COURT:  YOU BOTH HAVE MADE ME RECONSIDER MY
21   LETTER BRIEFING PROCEDURE.  I DIDN'T KNOW HOW EXTENSIVE THAT
22   CAN BE.  OR AT A MINIMUM, I MAY HAVE TO IMPOSE PAGE LIMITS OR
23   SOMETHING IN THE FUTURE.
24          I'M NOT -- I'M NOT ADMONISHING EITHER OF YOU ABOUT
25   THAT, BUT YOU CERTAINLY WERE ABLE TO CRAM A LOT OF ARGUMENT
```

1   INTO THESE LETTERS.

2          I CAN GIVE YOU JULY 26TH AT 2 O'CLOCK P.M.  WOULD

3   THAT WORK FOR YOU, MR. KAUFMAN?

4          MR. KAUFMAN:  LET ME CONFIRM THAT ON MY SCHEDULE.

5          THE COURT:  AND THEN I'LL ASK YOU THE SAME QUESTION,

6   MS. PEARCE, IF YOU HAVE YOUR SCHEDULE AVAILABLE.

7          MS. PEARCE:  I BELIEVE THAT WOULD.

8          THE COURT:  OKAY.

9          MR. KAUFMAN:  THAT WORKS FOR PLAINTIFF'S COUNSEL.

10         THE COURT:  OKAY.  WE'LL RESERVE JULY 26TH, 2017 AT

11  2 O'CLOCK P.M. FOR THAT HEARING.

12         MR. KAUFMAN:  THANK YOU, YOUR HONOR.

13         THE COURT:  OKAY.

14         MS. PEARCE:  YOUR HONOR, MAY I ASK FOR CLARIFICATION

15  ABOUT THE FEE STATEMENT.

16         DO YOU WANT IT SUBMITTED VIA E-MAIL, AS WE HAVE DONE

17  WITH THE LETTER BRIEFS, OR WOULD YOU LIKE TO HAVE IT PROPERLY

18  FILED?

19         THE COURT:  WHY DON'T WE -- THAT'S A GOOD QUESTION.

20         I DON'T KNOW HOW WE GENERALLY DO IT.  WE'VE DONE IT

21  A NUMBER OF TIMES, AND ALL I KNOW IS I END UP GETTING THE FEE

22  STATEMENT.

23         I THINK -- I THINK WE TYPICALLY HAVE IT FILED.

24  YEAH, OKAY.  SO JUST FILE IT IN NORMAL COURSE.

25         MS. PEARCE:  OKAY.

1          THE COURT:  YEAH.  ALL RIGHT.

2          MR. KAUFMAN:  I HAVE ONE LAST POINT OF

3    CLARIFICATION, YOUR HONOR, AND I'M NOT SURE, IT'S PROBABLY MY

4    CONFUSION IN MY NOTES.

5          I JUST WANT TO CONFIRM THAT THE EXTENT OF THE

6    CARVE-OUT FROM REQUEST FOR PRODUCTION 22, THE MARONICK

7    REQUEST, WHETHER IT INCLUDES SOLELY THE COMMUNICATIONS EXCEPT

8    FOR THOSE LISTED IN THE RULE, OR THOSE COMMUNICATIONS AND

9    DRAFT REPORTS WHICH THE COURT ALSO ACKNOWLEDGED ARE

10   PRIVILEGED?

11         THE COURT:  RIGHT.  SO I'M REQUESTING THAT

12   EVERYTHING THAT'S REQUESTED IN RFP 22 BE TURNED OVER, WITH

13   TWO EXCEPTIONS.  ONE IS THE COMMUNICATIONS.  THE

14   COMMUNICATIONS SHOULD NOT BE TURNED OVER, EXCEPT TO THE

15   EXTENT THAT I STATED, THOSE THREE EXCEPTIONS IN THE RULE, AND

16   NO DRAFT EXPERT REPORTS SHOULD BE TURNED OVER.

17         MR. KAUFMAN:  THANK YOU FOR THE CLARIFICATION, YOUR

18   HONOR.

19         THE COURT:  CERTAINLY.

20         MR. KAUFMAN:  I'M SORRY IF I MISUNDERSTOOD.

21         THE COURT:  NO, NO PROBLEM.  I WANT TO MAKE SURE

22   IT'S CLEAR FOR EVERYONE.

23         AND BEFORE I LET YOU ALL GO, IS THERE ANYTHING ELSE

24   THAT I SHOULD BE UPDATED ON IN THE CASE?  I REMAIN INTERESTED

25   IN THE CASE OBVIOUSLY AS IT CONTINUES ON AND CERTAINLY IN

39

1   TERMS OF SETTLEMENT AT SOME POINT AS WELL.

2           SO IF THERE IS ANYTHING ELSE YOU WANT TO LET ME KNOW

3   ABOUT, I'D BE HAPPY TO HEAR IT.

4           MR. KAUFMAN:  THANK YOU, YOUR HONOR.

5           MS. PEARCE:  NOT AT THIS TIME, YOUR HONOR.

6           THE COURT:  OKAY.  ALL RIGHT.  WELL, THANK YOU VERY

7   MUCH FOR THE ARGUMENT AND THE BRIEFING.  AND I GUESS I'LL SEE

8   YOU BOTH AGAIN ON JULY 26TH.

9           MS. PEARCE:  THANK YOU, YOUR HONOR.

10          THE COURT:  ALL RIGHT.  TAKE CARE.

11          MR. KAUFMAN:  THANK YOU.

12          (PROCEEDINGS CONCLUDED AT 3:12 P.M.)

13                     -- OO0OO --

14          I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT

15  FROM THE ELECTRONIC SOUND RECORDING OF THE PROCEEDINGS IN THE

16  ABOVE-ENTITLED MATTER.

17
    /S/CAMERON P. KIRCHER              6-22-17
18  TRANSCRIBER                        DATE

19

20

21

22

23

24

25

COMPUTER-AIDED TRANSCRIPTION