SHEPPARD MULLIN RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
DANA J. DUNWOODY, Cal. Bar No. 119696
SHANNA M. PEARCE, Cal. Bar No. 272430
12275 El Camino Real, Suite 200
San Diego, California 92130
Telephone: (858) 720-8900
Facsimile: (858) 509-3691
Email: ddunwoody@sheppardmullin.com
       spearce@sheppardmullin.com

P. CRAIG CARDON, Cal. Bar No. 168646
BENJAMIN O. AIGBOBOH, Cal. Bar No. 268531
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067
Telephone: (310) 228-3700
Facsimile: (310) 229-3701
Email: ccardon@sheppardmullin.com
       baigboboh@sheppardmullin.com

Attorneys for Defendant NORDSTROM, INC.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN BRANCA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>NORDSTROM, INC.,<br><br>Defendant. | Case No. 3:14-cv-02062-MMA-AGS<br><br>**NORDSTROM, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION TO QUASH SUBPOENA TO PRODUCE DOCUMENTS SERVED ON CITIBANK, N.A.** |

| | |
|---|---|
| 1 | Defendant Nordstrom, Inc. ("Nordstrom") respectfully submits this |
| 2 | Opposition to plaintiff Kevin Branca's ("Plaintiff") *Motion to Quash Subpoena to* |
| 3 | *Produce Documents Served on Citibank, N.A.* (the "Motion"). |

## SUMMARY OF ARGUMENT

Nordstrom has issued a routine Deposition Subpoena for the Production of Business Records to Citibank, N.A. (the "Subpoena") in order to verify the accuracy of Plaintiff's representations in discovery regarding his purchases at Nordstrom Rack, and to obtain information about Plaintiff's consumer experience, including at other at other off-price retailers, and behavior relevant to his claims of deception and reliance in this case. After a history of inconsistent statements and nondisclosures throughout discovery, Plaintiff now attempts to prevent Nordstrom from obtaining this needed information by way of his Motion to Quash, arguing that the Subpoena violates his financial privacy rights. What the Motion fails to mention, however, is that there is already a stipulated Protective Order in place which allows for designation of the documents as Attorneys' Eyes Only, a confidentiality designation which is more than adequate to address any realistic privacy concerns. Plaintiff has chosen to file a lawsuit based upon retail purchases made with a credit card, and more than that, he purports to act as a representative for a class of other consumers—a position which, if he prevails, will result in an award of compensation for such representation. It is hardly uncommon for a defendant to seek the financial records of a putative class representative in these circumstances, and if Plaintiff here feels that his own records are, for whatever reason, so uniquely personal that they cannot be produced, even under the terms of a stipulated Protective Order, perhaps he is not an adequate representative for a class. The Motion's proposed "compromise"—diversion of the records to Plaintiff for unilateral redaction of all information other than Nordstrom Rack transactions prior to production to Nordstrom—is procedurally improper, impractical, and unnecessary in light of the privacy protections already available. The Motion should be denied.

-1-

# ARGUMENT

## A. The Subpoena Seeks Information Relevant to the Claims and Defenses

The records sought by the Subpoena are relevant under Federal Rule of Civil Procedure 26(b). In the context of discovery, relevance "has a very broad meaning." *Heathman v. U.S.D.C. (C.D. Cal.)*, 503 F.2d 1032, 1035 (9th Cir. 1974). It has been construed to encompass "any matter that bears on, or that reasonably could lead to another matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Discovery should be allowed unless the information sought "has no conceivable bearing on the case." *Dale Evans Parkway 2012, LLC v. Nat. Fire and Marine Ins. Co.*, No. ED CV 15-9790JGB (SPx), 2016 WL 7486606, at *3-5 (C.D. Cal. Oct. 27, 2016) (quoting *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995)).[1]

The documents sought by the Subpoena satisfy this standard. Plaintiff agrees that his purchases at Nordstrom Rack are relevant, but insists that Nordstrom should be limited to Plaintiff's own discovery responses for that information (Motion, at 2). The history of Plaintiff's inconsistent representations, however, warrants their verification against the records of a neutral third party. Plaintiff's Third Amended Complaint ("TAC") includes an image of a price tag, identified as "[a] copy of the price tag for the dress pants *purchased by Plaintiff*." TAC, Nov. 10, 2015, Dkt. No.

---

[1] To the extent that Plaintiff's reference to language regarding "direct[] relev[ance]" in *Britt v. Superior Court*, 20 Cal. 3d 844, 859-862 (1978) is intended to suggest that a different standard of relevance should apply, that suggestion would be incorrect. While federal courts sitting in diversity in California recognize the interest in financial privacy under state law, *relevance* determinations are still governed by the Federal Rules of Civil Procedure. *See, e.g., Garcia v. Progressive Choice Ins. Co.*, No. 11cv466-BEN, 2011 WL 4356209, at *2-5 (S.D. Cal. Sep. 26, 2011) (applying California privacy privilege in diversity action, evaluating relevance under Fed. R. Civ. P. 26 standard); *CatchPlay Inc. v. Studio Solutions Group, Inc.*, No. CV 12-7525 GW(JC), 2013 WL 12146123, at *5 (C.D. Cal., Mar. 28, 2013) (same); *Albizio v. Wachovia Mortg.*, No. 2:11-cv-2991 AC C, 2013 WL 1087815, at **3-4 (E.D. Cal. Mar. 14, 2013) (same); *Dale Evans Parkway 2012, LLC*, 2016 WL 7486606, at *3-5 (same).

36, ¶ 57 (emphasis added).  He did not disclose the transaction in discovery, one of several deficiencies which led to Nordstrom's Motion to Compel.  Plaintiff now states that the purchase, which took place after the original complaint was filed, was *not* his own.  *See* Declaration of Shanna M. Pearce ("Pearce Decl."), ¶ 2, Exh. A (Supplemental Response to Interrogatory No. 2).  Until this Court granted Nordstrom's Motion to Compel, Plaintiff had not produced any credit card records in response to Nordstrom's discovery requests seeking all documents reflecting his Nordstrom Rack purchases and identification of the credit cards used.  In prior meet and confer, he had offered only a "supplemental" response stating that he had disposed of the Citibank card he had used at Nordstrom Rack.  *Id.* ¶ 3, Exh. B, p. 1.  Now that Nordstrom has issued a subpoena to his bank, however, he has scrambled to keep Nordstrom from obtaining the documents.  He has not only filed this Motion, he has also somehow managed to produce to Nordstrom a handful of heavily redacted credit card statements, none of which were originally produced or identified as withheld.[2]  *Id.*  ¶ 4.  Nordstrom should not be forced to rely upon Plaintiff to provide documents which he should have provided long ago, nor be prevented from checking Plaintiff's inconsistent statements against the records of a neutral third party.

The records reflecting Plaintiff's purchases from other off-price and full price retailers are also highly relevant to the issues of deception and reliance.  Plaintiff's claims against Nordstrom of false advertising, unfair competition, and violations of California's consumer protection statutes are based upon allegations that he was deceived by the comparison prices on products he purchased at Nordstrom Rack, that his understanding of those comparison prices was reasonable, and that the comparison prices induced him to make purchases that he would not otherwise have

---

[2] If Nordstrom had known that the credit card records were within Plaintiff's possession, custody, or control and were being withheld on a claim of privilege, Nordstrom certainly would have challenged that assertion as it does here.

made. TAC at ¶¶ 56-65, 68-69, 77, 92, 99-101, 112, 117, and 122-123. Nordstrom believes that the Subpoenaed records will show Plaintiff's familiarity with outlet stores and comparison pricing generally, as well as with the full-price and off-price markets for the brands he purchased at Nordstrom Rack. A pre-existing familiarity with comparison pricing, and independent knowledge of the going prices for the brands he purchased at Nordstrom Rack, would undoubtedly be relevant to his claims that he was deceived by Nordstrom's comparison prices, and that his purported understanding of those prices was reasonable. An independent knowledge of the going prices for the brands he purchased would also make it less likely that he relied upon any comparison price when making his purchases. The Subpoena is not a "fishing expedition" in this respect, as Plaintiff's Supplemental and Amended Interrogatory Responses have now identified dozens of other items in Plaintiff's possession from the same brands he purchased at Nordstrom Rack, including 37 Quicksilver products which Plaintiff believes were purchased at Macy's or other department stores, and 53 Tommy Hilfiger garments, which Plaintiffs believes were mostly purchased from a Tommy Hilfiger outlet store though he does not recall the dates of purchase. Pearce Decl., ¶ 2, Ex. A (Supplemental Response to Interrogatory Nos. 11 and 12). The dates of those purchases are likely to be contained within the subpoenaed records.

The relevance, and discoverability, of this information in Plaintiff's bank records is demonstrated by comparison to *F.T.C. v. AMG Services, Inc.*, 291 F.R.D. 544 (D. Nev. 2013). In that case, the defendant lender issued subpoenas for bank records of several FTC consumer witnesses who had testified that they were reasonably deceived by the defendant's loan disclosures. *Id.* at 550. The FTC moved to quash the subpoenas, arguing, much as Plaintiff does here, that only transactions with the defendant were relevant. *Id.* at 550-53. The court rejected that argument, and found that the consumers' experiences with other payday loans and lenders would have directly informed the consumers' understanding of the

defendant's loans. *Id.* The court held that the defendant was entitled to the discovery to support its arguments about whether the consumers acted reasonably "in light of their familiarity with payday loans such as the ones at issue in this action." *Id.*[3]

Evidence concerning Plaintiff's consumer behavior *since* he allegedly became aware of these purportedly deceptive pricing practices (and brought nearly-identical claims against both Nordstrom Rack and the Ralph Lauren outlet), is also relevant, including evidence of whether he changed his habits of shopping at Nordstrom Rack and other outlet and off-price stores employing similar comparison pricing practices. Such evidence is relevant to Plaintiff's claim that he was induced to make his purchases by the allegedly-deceptive comparison prices, and that he would not have made his purchases were it not for his reliance upon Nordstrom's "false representations." TAC ¶¶ 92, 123.

The two cases quoted at length by Plaintiff are not factually similar to this case, and illustrate only that discovery is disallowed when it is not relevant. *See In re Wells Fargo Residential Mortgage Lending Discrimination Litig.*, C-08-1930 MMC (JL), 2009 U.S. Dist. LEXIS 130344, 2009 WL 1771368 (N. D. Cal. June 19, 2009) (Wells Fargo admitted that it sought financial records to determine whether plaintiffs had made misrepresentations in loan applications, but such misrepresentations, even if found, would be no defense to claims that Wells Fargo had assessed racially discriminatory fees *after* it had qualified plaintiffs for loans) and *Kee v. R-G Crown Bank*, No. 206-cv-00602-DAK-PMW, 2007 U.S. Dist. LEXIS 61106, 2007 WL 2406938 (D. Utah Aug. 20, 2007) (only payments made to

---

[3] While the court in *F.T.C. v. AMG Services, Inc.* did permit application of redactions for other unrelated transactions, its main concern—the privacy of the nonparty consumer witnesses—does not apply here. 291 F.R.D. at 555-56 (privacy interests are "protected with greater force in the context of third party discovery"). Procedural and practical concerns also weigh against Plaintiff's proposed redaction in this case, as explained further below.

defendant loan servicer were relevant to questions of default and foreclosure; subpoena encompassed all transactions for a time period when neither party contended that payments had been made).[4] Neither of these cases is on point with the facts of the instant case. *F.T.C. v. AMG Services, Inc.*, *supra*, demonstrates that such evidence of a plaintiff's familiarity with similar businesses and products is relevant to claims of deception, and is an appropriate aim of discovery.

### B. Any Privacy Concerns are Adequately Addressed by the Stipulated Protective Order

The Protective Order already in place, which was negotiated and agreed upon by the Parties, is adequate to address Plaintiff's financial privacy concerns. February 7, 2017, Dkt. No. 78. Nordstrom has no objection to providing the Protective Order to Citibank with instruction to Citibank to complete the necessary declaration and to designate all produced records as Attorneys' Eyes Only. Such measures, which would severely restrict the scope of use and disclosure of the documents, are sufficient to balance Nordstrom's need for the documents with Plaintiff's interest in his financial privacy. Plaintiff has failed to make or support any argument to the contrary.

While it is true that California recognizes a privacy right in financial information, that right is by no means absolute. *Moskowitz v. Superior Court*, 137 Cal. App. 3d 313, 316 (1982). Rather, a court may allow discovery of private financial bank records after conducting a balancing test between the right of litigants to discover relevant facts, and the right of bank customers to maintain reasonable privacy. *Dale Evans Parkway*, 2016 WL 7486606, at *5 (citing *Fortunato v. Superior Court*, 114 Cal. App. 4th 475, 480-81 (2003)). As demonstrated above, the

---

[4] *See also Kee v. Fifth Third Bank*, No. 2:06-CV-00602-CW, 2008 WL 4774677, at *1 (D. Utah Oct. 31, 2008) (later proceedings describing background of lawsuit claims which was absent from the cited August 20, 2007 discovery dispute decision).

information sought by the Subpoena is highly relevant to Nordstrom's defense against Plaintiff's claims of deception and reliance. As a party, and indeed the party who initiated the suit purporting to act on behalf of a class, Plaintiff does not have the same expectation of such privacy as a third party would (*Id.* at 6). The interest he does have in maintaining the privacy of his financial records can be adequately addressed by the stipulated Protective Order, the purpose of which is to protect confidential information, while still allowing Nordstrom to obtain the information it needs to defend itself.

Protective orders are the preferred means of balancing privacy rights against the public policy in favor of broad discovery. The court in *Moskowitz*, a leading case on the topic of financial privacy in California (also cited by Plaintiff in the Motion), did not deny or restrict the scope of *discovery* on the basis of financial privacy. *Id.* Rather, the court found only that the petitioner was entitled to a protective order restricting the *disclosure* of the information to those "with a legitimate interest in its use for purposes of the litigation." *Id.* While Plaintiff is correct that the scope of *disclosure* of private financial information should be narrowed to the extent necessary to resolve the lawsuit (Motion at 4-5; citing *Moskowitz, supra*), the best means of doing so is to designate the documents as confidential under a protective order, not to quash a subpoena for relevant information or to re-route the documents to a party for unilateral modification prior to production. *See, e.g., Gen-Probe Inc. v. Becton, Dickinson and Co.,* Nos. 09cv2319 BEN (NLS), 2010 WL 11442888, at *3 (S.D. Cal. Sep. 13, 2010) (production ordered of documents which were "relevant and [would] help in resolving [the] lawsuit" because, "if produced under the protective order already in place in this case, the disclosure will be narrowly tailed to the extent necessary" to address financial privacy concerns); *Oakes v. Halvorsen Martine Ltd.*, 179 F.R.D. 281, 284 (C.D. Cal. 1998) ("While a party does have an interest in nondisclosure and confidentiality of its financial records, this interest can be adequately protected

-7- Case No. 3:14-cv-02062

OPPOSITION TO MOTION TO QUASH
SUBPOENA SERVED ON CITIBANK

by a protective order."). *See also, e.g., Albizio*, 2013 WL 1087815 (protective order was sufficient to address privacy interest in irrelevant transactions in bank records). A confidentiality designation under the stipulated Protective Order entered in this case would adequately narrow the scope of use and disclosure of Plaintiff's bank records.

Plaintiff has made no showing of harm he would suffer by production under the Protective Order. Other courts have rejected such attempts to limit discovery without any showing of potential harm. *See, e.g.*, *Dale Evans Parkway 2012, LLC*, 2016 WL 7486606, at *3-5 (privacy objections to discovery of bank records insufficient absent identification of specific harm which would be suffered); *Wells Fargo Bank, N.A. v. Iny*, No. 2:13-cv-015610MMD0NJK, 2014 WL 1796216, at *3 (D. Nev. May 6, 2014) (rejecting party's "vague" assertions that bank records contain "sensitive" information; absent showing of harm or prejudice sufficient to deny the discovery, privacy concerns could be mitigated by protective order); *Oakes*, 179 F.R.D. at 284 (where parties were not competitors, disclosure of financial records under protective order would not cause harm).

Plaintiff here does not legitimately seek to restrict the scope of use and disclosure of his financial information—such restriction is available under the Protective Order. Instead, he seeks to deny or severely restrict the scope of discovery itself. Where the information sought is relevant, as it is here, such denial and restriction is inappropriate. Plaintiff has made no showing of potential harm which would result from production under the Protective Order, and his request to quash the Subpoena should be denied.

### C. Plaintiff's Proposed Redactions are Inappropriate and Impractical

Plaintiff has proposed that the bank records should be re-routed to Plaintiff's counsel, or independently obtained by Plaintiff's counsel, for redaction of all transactions other than Nordstrom Rack purchases prior to production. Motion at 2.

1   Such a "compromise" is inappropriate for a number of reasons, some legal and some
2   practical.
3       First, nowhere in the Federal Rules is such a procedure contemplated. Third
4   party documents must be produced by, and authenticated by, the third party. To
5   send the documents first to Plaintiff's counsel for manipulation would rob them of
6   their evidentiary value – Citibank would no longer be able to authenticate them
7   under F.R.E. 901, or establish a hearsay exception under F.R.E. 803(6).
8       Second, even if this procedure were contemplated by the rules, many courts
9   faced with the question have found that unilateral redaction of party information on
10  the basis of *relevance* is inappropriate under the Federal Rules (particularly where a
11  protective order is in place to address any confidential information). *See, e.g., Virco*
12  *Manufacturing Corp. v. Hertz Furniture Systems*, No. CV 13-2205 JAK (JCX),
13  2014 WL 12591482, at *5 (C.D. Cal. Jan. 21, 2014) (collecting cases); *In re Medeva*
14  *Sec. Litig.*, No. 93-4376-KN AJWX, 1995 WL 943468, at *3 (C.D. Cal. May 30,
15  1995); *Evon v. Law Offices of Sidney Mickell*, No. CIVS090760JAMGGH, 2010
16  WL 455476, at *2 (E.D. Cal. Feb. 3, 2010). As explained by the court in *Evon*:

> Redaction is, after all, an alteration of potential evidence. The Federal
> Rules sanction only very limited unilateral redaction, *see* Fed. R. Civ.
> P. 5.2. Outside of these limited circumstances, a party should not take
> it upon him, her or itself to decide unilaterally what context is
> necessary for the non-redacted part disclosed, and what might be
> useless to the case. It should not come as a shock to those involved in
> litigation, that parties may see the outcome differently. Moreover,
> protective orders are available to shield irrelevant, but important-to-
> keep confidential information, and unless the protective order permits
> partial production, a document should be produced in its entirety.

*Id.*

Not only is such redaction improper, it is unwise, and often leads to
unnecessary complication and further disputes. As suggested by the *Evon* court
above, and aptly stated by the court in *In re Medeva Sec. Litig.*:

> The problem is less the principles than the procedure. . . . Even when implemented with restraint and in good faith, the practice frequently gives rise to suspicion that relevant material harmful to the producing party has been obscured. It also tends to make documents confusing or difficult to use. All too often, the practice results in litigation of collateral issues and *in camera* review of documents by the Court, with the result that the time of both counsel and the Court is wasted. These drawbacks ordinarily outweigh the minimal harm that may result from disclosure of some irrelevant material.

1995 WL 943468, at *3. Defendant clearly disagrees with Plaintiff's position that only Nordstrom Rack transactions are relevant. Assuming that this Court agrees that other retail transactions are also relevant, constructing a clear set of constraints for Plaintiff's redactions would be challenging and likely court further conflict. That is particularly true in this case given the history of Plaintiff's inconsistent statements and resistance to production of these particular documents.[5] Furthermore, for Plaintiff to either intercept Citibank's production, or else to quash the pending Subpoena and re-obtain the documents, and then to apply redactions to several years of individual transactions, would be incredibly time-consuming. The process proposed by Plaintiff is procedurally inappropriate, would risk further disputes and delays, and, most importantly, is simply unnecessary in light of the stipulated Protective Order which is already in place.

## CONCLUSION

In light of all of the foregoing, Plaintiff's Motion to quash the Subpoena upon Citibank should be denied.

---

[5] Plaintiff's questionable approach to unilateral redaction has already been demonstrated in the few bank records he has now located and included in the recent production. At least one of the statements, at PLAINTIFF 00164-00169, was so heavily redacted that the date of the statement could not be identified, but the Plaintiff's account balance, interest rate, interest charged, fees charged, and one unrelated transaction were left unredacted. *See* Pearce Decl. ¶ 4 (exhibit omitted, available for *in camera* inspection).

Dated: July 26, 2017     SHEPPARD MULLIN RICHTER & HAMPTON LLP

By     */s/ Shanna M. Pearce*
SHANNA M. PEARCE
Attorneys for Defendant
NORDSTROM, INC.

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing documents has been served on July 26, 2017 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.

By *   /s/ Shanna M. Pearce*
      SHANNA M. PEARCE